**RSM, INCORPORATED, d/b/a Valley Gun, Petitioner–Appellant,**

v.

**Arthur W. HERBERT, Director of Industry Operations, Washington Field Division, Bureau of Alcohol, Tobacco, Firearms and Explosives, Respondent–Appellee.**

No. 06–1393.

United States Court of Appeals,
Fourth Circuit.

Argued Sept. 18, 2006.

Decided Oct. 26, 2006.

**ARGUED:** Richard E. Gardiner, Fairfax, Virginia, for Appellant. Ariana Wright Arnold, Office of the United States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:** Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, for Appellee.

Before NIEMEYER, MICHAEL, and MOTZ, Circuit Judges.

Affirmed by published opinion. Judge NIEMEYER wrote the opinion, in which Judge MICHAEL and Judge MOTZ joined.

NIEMEYER, Circuit Judge.

RSM, Inc. d/b/a Valley Gun ("Valley Gun"), a firearms dealer licensed to sell firearms by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") under 18 U.S.C. § 923, commenced this action by filing a Petition for Judicial Review of ATF's revocation of its license. ATF had revoked Valley Gun's license effective March 1, 2005, because Valley Gun, "after an extended opportunity to place [its] operations in compliance with the Gun Control Act, ha[d] committed over 900 willful violations of the Gun Control Act." In its Petition for Judicial Review, Valley Gun alleged that its violations resulted from "inadvertent, technical record-keeping error[s]" and therefore were not "willful" as required for a license revocation under 18 U.S.C. § 923(e).

The district court granted ATF's motion for summary judgment, concluding:

> The undisputed evidence, including [Valley Gun's president's] own testimony, conclusively establishes that [Valley Gun] was well aware of the regulations imposed on federal firearms dealers and yet, despite that knowledge, continued to violate those same regulations. Thus, [Valley Gun's] conduct clearly meets the definition of willful.

Because Valley Gun repeatedly violated requirements of the Gun Control Act with knowledge of the law's requirements and after repeated warnings by ATF, we hold that Valley Gun's plain indifference toward its known legal obligations satisfies the willfulness requirement in 18 U.S.C. § 923(e). Accordingly, we affirm.

I

Valley Gun, a firearms dealer in Baltimore, Maryland, began as a sole proprietorship in 1954 and was incorporated in 1991. In 1996 when his father died, Sanford M. Abrams took over as president of the corporation.

A little less than a year after Abrams took over, in February 1997, ATF cited the

corporation for violations of the Gun Control Act of 1968, Pub.L. No. 90–618, 82 Stat. 1213, as amended by the Firearms Owners' Protection Act of 1986, Pub.L. No. 99–308, 100 Stat. 449. It notified Valley Gun that Valley Gun had provided incorrect or incomplete information on thirty-one ATF Forms 4473 (which Valley Gun was required to complete in every over-the-counter firearms transaction to demonstrate that the person purchasing the firearm was qualified to be a purchaser); that nine firearms in inventory could not be traced to the bound recordbook of acquisitions and dispositions (the "A & D Book"); that 45 firearms recorded in the A & D Book as present in inventory were in fact missing from inventory; and that Valley Gun failed accurately to record dispositions of firearms transferred to other dealers. By letter dated July 21, 1997, ATF warned Valley Gun "that your [federal firearms license] is conditioned upon your compliance with Federal Firearms laws and regulations. Repeat violations of those listed above will be viewed as willful, and may result in the revocation of your license."

At a second inspection of Valley Gun in October 1999, ATF officials again discovered that Valley Gun improperly completed fourteen ATF Forms 4473 and failed to record the transfer of seven firearms in the A & D Book. ATF officials met with Abrams to communicate the seriousness of such violations and provided Abrams with a warning letter stating, "As the result of these violations, we are contemplating revocation of your Federal Firearms License."

When ATF officials inspected Valley Gun's operations for the third time in September 2001, they again discovered numerous, indeed an increasing number of violations. Valley Gun had made mistakes on no fewer than four hundred nineteen ATF Forms 4473, and 133 firearms were missing from the inventory reflected in Valley Gun's A & D Book. Additionally, Valley Gun transferred three firearms after the related criminal-background checks for the purchasers had expired. Valley Gun also neglected to complete nineteen ATF Forms 3310.4, which required information in connection with the sales to purchasers of multiple firearms. ATF again provided Valley Gun a letter warning that "as the result of these violations, we are contemplating the revocation of your Federal Firearms License." ATF officials also took the unusual step of holding a second warning conference with Abrams and his management, during which Abrams acknowledged Valley Gun's legal obligations under the Gun Control Act. Abrams told the ATF official that he would take a more hands-on approach toward making the records more accurate, and he promised to comply in the future.

ATF conducted a fourth and final inspection of Valley Gun's premises in May 2003, when it discovered yet an increased number of violations of the Gun Control Act. Twenty-nine ATF Forms 4473 contained mistakes, and Valley Gun had transferred a firearm to a purchaser after the purchaser's criminal-background check had expired. More significantly, however, comparing Valley Gun's inventory with its A & D Book revealed that 287 firearms were missing. In addition, the A & D Book failed to include dispositions of three weapons subject to the special registration requirements of the National Firearms Act (regulating especially dangerous weapons such as machine guns and silencers, *see* 26 U.S.C. § 5845). In view of these violations, ATF charged Valley Gun in five counts with violating 18 U.S.C. §§ 923(g)(1)(A) and 922(t)(1) and 27 C.F.R. §§ 478.125(e), 478.124(c), and 478.102(c), and gave Valley Gun notice, dated May 5, 2004, that its license was revoked, subject

to a revocation hearing. ATF alleged that all five counts involved repeat and willful violations.

At the revocation hearing, held on October 6, 2004, Abrams gave various explanations for the violations, although he did not dispute the violations themselves. He testified that he did not clearly recollect some of the prior meetings with ATF officials, and he denied having read some of the applicable regulations. With respect to each of the violations charged, however, Abrams admitted he knew Valley Gun's obligations under the regulations. Abrams admitted he understood the importance of filling out ATF Forms 4473 accurately and completely and of maintaining an acquisition and disposition record in the A & D Book for every firearm. He had been in the firearms business for more than ten years, and he had been president of Valley Gun most of that time. He had attended four to six ATF seminars, and indeed, he had actually run a few of the seminars himself. He indicated that he relied on employees and "had no idea" about their documentary failures. He stated that he had "no reason to believe the errors were due to anything other than human error." Abrams expressed that he was "extremely frustrated" by the violations but believed that they resulted merely from "human error." At bottom, his defense was that the violations were not "willful" as required for revocation of a license.

After considering the evidence, the hearing officer found on the first count:

Abrams kept repeating that he thought his employees were doing things correctly and basically placed all blame on the employees without accepting any responsibility or blame for his own actions as President. Abrams could not remember or provide even one instance where he had a meeting with his employees and specifically went over the exact requirements in the regulations.

* * *

I do not find licensee's reasoning [that] this violation was not willful as the errors that repeatedly occurred were due to human error and not due to some sort of bad intent by the licensee to be acceptable.

The hearing officer made similar findings on each other count, noting that Valley Gun had been repeatedly advised of its violations and warned that it could lose its license. Addressing specifically his finding of willfulness with respect to all counts, the hearing officer wrote:

The standard of willfulness in Federal Firearms License revocation hearings includes plain indifference or intentional disregard. That is the licensee knew what was required but failed to do it either through plain indifference or intentional disregard. The standard does not require the Government show the licensee acted with a bad purpose. I found all of the Counts listed to meet the standard of willfulness.

The record made by the hearing officer was reviewed by Arthur Herbert, ATF's Director of Industry Operations, Baltimore Division, who thereafter gave Valley Gun final notice that its license was revoked, effective March 1, 2005.

Valley Gun commenced this action in the district court to review ATF's action de novo, pursuant to 18 U.S.C. § 923(f)(3). On ATF's motion, the district court entered summary judgment on February 23, 2006, based on the agency record, affirming ATF's revocation order. The district court subsequently denied Valley Gun's motion to suspend the effective date of its order pending appeal. This appeal followed.

## II

As its principal argument on appeal, Valley Gun claims that its violations of the Gun Control Act were not willful. It argues that over the 11–year period from June 1992 until the last inspection in May 2003, it sold approximately 30,000 firearms (roughly 225 per month) and that the violations for which it was charged involved only a small percentage of all of the firearms sold. It also asserts that, based on the testimony of Abrams, it "had no reason to believe that the entries which were not made were due to anything other than human error." With respect to some violations, it asserts that they were in fact the product of human error. Valley Gun argues that its conduct was not "willful," as required for revocation of its license under 18 U.S.C. § 923(e), because willfulness requires proof that it acted " 'intentionally and purposely and with the intent to do something the law forbids, that is, with the bad purpose to disobey or to disregard the law.' " *Bryan v. United States*, 524 U.S. 184, 190, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998) (quoting the district court's jury instruction).

■ ATF argues that "willful" as used in § 923(e) can be demonstrated if a firearms dealer, "with knowledge of what the regulations require, ... repeatedly violated these regulations." It asserts that on the record in this case, the standard is "easily satisfied."

The statute provides in relevant part:

The Attorney General may, after notice and opportunity for hearing, revoke any license issued under this section if the holder of such license has *willfully violated* any provision of this chapter or any rule or regulation prescribed by the Attorney General under this chapter.

18 U.S.C. § 923(e) (emphasis added). The regulation promulgated under this section provides similarly:

Whenever the Director of Industry Operations has reason to believe that a licensee has *willfully violated* any provision of the Act or this part, a notice of revocation of the license, ATF Form 4500, may be issued.

27 C.F.R. § 478.73(a) (emphasis added). Accordingly, to resolve this case, we must interpret "willfully," as used in 18 U.S.C. § 923(e) and 27 C.F.R. § 478.73(a).

We, of course, recognize that "willfully" is "a word of many meanings whose construction is often dependent on the context in which it appears." *Bryan*, 524 U.S. at 191, 118 S.Ct. 1939. At its core, however, the term describes conduct that results from an exercise of the will, distinguishing "intentional, knowing, or voluntary" action from that which is "accidental" or inadvertent. *United States v. Illinois Central R.R.*, 303 U.S. 239, 243, 58 S.Ct. 533, 82 L.Ed. 773 (1938) (internal quotation marks and citations omitted); *see also Bryan*, 524 U.S. at 191, 118 S.Ct. 1939 ("Most obviously, [willfully] differentiates between deliberate and unwitting conduct. . . ."); *Prino v. Simon*, 606 F.2d 449, 451 (4th Cir.1979) (noting that "a conscious, intentional, deliberate, voluntary decision properly is described as willful").

■ Moreover, "willfully" has been held to denote a mental state of greater culpability than the closely related term, "knowingly." *See Illinois Central R.R.*, 303 U.S. at 242–43, 58 S.Ct. 533 (explaining that " '[w]illfully' means something not expressed by 'knowingly' " (citation omitted)). "Knowingly" typically refers only to one's knowledge of *the facts* that make his conduct unlawful, not to one's knowledge of *the law*. *See Bryan*, 524 U.S. at 193, 118 S.Ct. 1939; *United States v. Bailey*, 444 U.S. 394, 404, 100 S.Ct. 624, 62

L.Ed.2d 575 (1980) (finding that a prison escapee acted "knowingly" because he "knew his actions would result in his leaving physical confinement"). Whereas "willfully," especially when used in a criminal statute, usually requires a showing of a "bad purpose"—proof that " 'the defendant acted *with knowledge that his conduct was unlawful.*' " *Bryan,* 524 U.S. at 192, 118 S.Ct. 1939 (emphasis added) (quoting *Ratzlaf v. United States,* 510 U.S. 135, 137, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994)).[1]

Accommodating the fundamental principle that ignorance of the law is no excuse, the Supreme Court in *Bryan*—construing "willfully" in § 924(a)(1)(D)—rejected a definition of "willfully" that required the defendant to have knowledge of *the law which he is accused of violating.* 524 U.S. at 196, 118 S.Ct. 1939. Rather, a more general knowledge "that the conduct is unlawful is all that is required."[2] *Id.* The Court recognized, though, that the willfulness requirement was *also* satisfied by a showing of, among other things, a disregard of or an indifference to known legal obligations. *Id.* at 197–99, 118 S.Ct. 1939;

see also *Article II Gun Shop, Inc. v. Gonzales,* 441 F.3d 492, 497 (7th Cir.2006) (finding "willfulness" when a licensee "knew of his legal obligation and purposefully disregarded or was plainly indifferent to the record-keeping requirements"); *Appalachian Res. Dev. Corp. v. McCabe,* 387 F.3d 461, 464–65 (6th Cir.2004) ("[W]here a licensee understands his or her legal obligations under the GCA, yet fails to abide by those obligations, his or her license can be denied or revoked on the basis that the dealer 'willfully' violated the GCA"); *cf. Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives,* 415 F.3d 1274, 1277 (11th Cir. 2005) ("[A] showing of purposeful disregard of or plain indifference to the laws and regulations imposed on firearms dealers shows willfulness for purposes of § 923(d)(1)(C)").

Thus, when determining the willfulness of conduct, we must determine whether the acts were committed in deliberate disregard of, or with plain indifference toward, either known legal obligations or the

---

1. In a civil action, "willful" generally requires a showing of a disregard for the law, *see Illinois Cent. R.R.,* 303 U.S. at 243–44, 58 S.Ct. 533, or a "reckless" lack of concern for an action's potential illegality, *see e.g., McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 134, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988) (interpreting "willfully" in the Fair Labor Standards Act to describe an employer that "knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute"); *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 126, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985) (using the same standard of "willfully" in the Age Employment Discrimination Act). Although this is a civil action to contest the revocation of a firearms license, we construe "willfully" in § 923(e) in accordance with *Bryan's* construction of the term in the criminal context of § 924(a)(1)(D). Congress added "willfully" to both sections by enacting the Firearm Owners' Protection Act of 1986, Pub.L. No. 99–308, 100 Stat. 453,

and we presume that Congress intended the same word used multiple times in a single act to carry a consistent meaning. *See Ratzlaf,* 510 U.S. at 143, 114 S.Ct. 655 ("A term appearing in several places in a statutory text is generally read the same way each time it appears."). Moreover, "willful" violations of the Gun Control Act can lead to *either* a license revocation under § 923(e) *or* a criminal penalty under § 924(a)(1)(D).

2. The *Bryan* Court characterized the few cases which construed "willfully" to require a showing that the defendant "knew the *specific law* he was violating" to be narrow exceptions to this general rule. 524 U.S. at 194–95, 118 S.Ct. 1939 (emphasis added). These cases involved criminal violations of the tax laws, *see e.g., Cheek v. United States,* 498 U.S. 192, 199–200, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991), and the structuring of cash transactions to avoid a reporting requirement, *see Ratzlaf,* 510 U.S. at 137, 114 S.Ct. 655.

general unlawfulness of the actions. But when applying such a formulation of willfulness to an omission—the *failure* to act—there is seldom direct evidence that a person intentionally failed to do something that was legally required. Thus, when evaluating omissions alleged to be deliberate, it is often necessary to ascertain whether the failure to act resulted from a conscious consideration of the legal requirement to act. While evidence of willfulness in this context may be more elusive than in the context of affirmative actions, a court may infer willful omission from a defendant's plain indifference to a legal requirement to act if the defendant (1) knew of the requirement *or* (2) knew generally that his failure to act would be unlawful.

Because most of Valley Gun's violations in this case were omissions and in the absence of direct evidence establishing intentionality, we must evaluate the evidence to determine whether Valley Gun showed plain indifference towards known legal requirements to act or a more generalized knowledge that its failure to act would be unlawful.

Valley Gun argues that its violations were not willful but were accidental and inadvertent human errors. It asserts that it tried to comply with the statutory and regulatory requirements, but because it conducted so many transactions, human errors were virtually inevitable. For instance, it points to ATF's inspection in May 2003 when errors were found on just twenty-nine of three hundred forty-five ATF Forms 4473 examined, an 8% error rate.

To be sure, a single, or even a few, inadvertent errors in failing to complete forms may not amount to "willful" failures, even when the legal requirement to complete the forms was known. Yet *at some point*, when such errors continue or even

increase in the face of repeated warnings given by enforcement officials, accompanied by explanations of the severity of the failures, one may infer as a matter of law that the licensee simply does not care about the legal requirements. *At that point*, the failures show the licensee's plain indifference and therefore become willful.

■ The record is essentially undisputed in this case, and from it we conclude that the long history of repeated failures, warnings, and explanations of the significance of the failures, combined with knowledge of the legal obligations, readily amounts to willfulness as used in 18 U.S.C. § 923(e). While we need not here delineate at what point in the course of Valley Gun's repeated failures willfulness could have been inferred, their number and seriousness in this case in the face of repeated warnings undoubtedly satisfy the willfulness requirement. As the ATF hearing officer found, based on evidence presented at the administrative hearing:

> This licensee received one warning letter and has been to two warning conferences, which is reflected in the testimony presented by [ATF Officer] Fronszak and the documents entered into evidence. These occurred prior to the inspection by [ATF Officer] Dickinson, which ultimately resulted in the Notice of Revocation. The violation cited in the previous inspections and noted on the Warning Letter, warning conference letters and warning conferences are repeat violations, which are again found by Dickinson in his most recent inspection. In my opinion, this clearly meets the level of at least plain indifference, which is a willfulness standard for firearms revocation hearings. The licensee was told of the errors and violations, and knew what was required yet they continue to make the same types of errors and violations over and over.

In ultimately revoking Valley Gun's license, Arthur Herbert, ATF's Director of Industry Operations, Baltimore Division, summarized his reasons:

> In this case, the licensee, after an extended opportunity to place his operations in compliance with the Gun Control Act, has committed over 900 willful violations of the Gun Control Act. As such, his license is subject to revocation.

The district court concluded that Valley Gun was "well aware" of the law's requirements and "despite that knowledge, continued to violate" them. The court concluded that Valley Gun's conduct "clearly meets" the definition of willfulness.

We agree with each of these rulings and conclude that because Valley Gun had "willfully violated" the Gun Control Act and regulations promulgated under it, ATF was authorized to revoke its license under 18 U.S.C. § 923(e).

### III

Valley Gun also contends that some of its omissions occurred more than five years before May 5, 2004, when ATF gave it notice of license revocation and that therefore ATF's enforcement effort with respect to violations before May 1999 is barred by the five-year statute of limitations contained in 28 U.S.C. § 2462 (providing that an enforcement proceeding may not be "entertained unless commenced within five years from the date when the claim first accrued"). Without deciding here whether § 2462 applies, we conclude that Valley Gun's argument nonetheless lacks merit, because it misunderstands the grounds for which ATF revoked its license. The conduct charged in the five counts filed to support revocation of Valley Gun's license took place within five years of May 5, 2004. Indeed, the cited conduct occurred after the 2002 inspection

and thus occurred within two years of the May 5, 2004 notice date.

While it is true that the hearing officer relied on the long history of violations and warnings extending back to 1997 *to find willfulness*, he based the revocation only on violations that occurred within the five-year period. Those violations, even if supported by evidence of intent that dated from 1997, did not "accrue" until the elements of each violation occurred. *See Article II Gun Shop*, 441 F.3d at 496 (distinguishing between "acts that are prosecuted and acts that would be barred by the statute of limitations but are admissible to show that an act being prosecuted actually occurred"). In this case, each of the violations of the Gun Control Act and its regulations occurred within the five-year period and could not have been enforced before they occurred—until transfers of guns were made without proper documentation.

### IV

Arguing at a more generalized level, Valley Gun would have us accept that its violations of the Gun Control Act were inadvertent human errors of a small magnitude, constituting only technical violations of the Act, such that the violations do not justify a license revocation under 18 U.S.C. § 923(e). This argument, however, loses sight of the larger picture and the need for strict compliance with the Gun Control Act.

■ Repeatedly, Valley Gun failed to complete ATF Forms 4473, which must accompany each over-the-counter firearm sale. This form goes to the core of the Gun Control Act's requirements. It is a form by which the purchaser must certify, subject to punishment for false statements, facts demonstrating that the purchaser is entitled to own a gun. *See* 27 C.F.R. § 478.124(c)(1). The purchaser must show that he is not, for example, a felon, a

fugitive, a drug addict, or an illegal alien. Valley Gun also failed to account for 287 guns, any one of which, as ATF pointed out during oral argument, could have "gone out the back door" to an illegal purchaser for a high price. Valley Gun failed to document properly three especially dangerous weapons required for special registration under the National Firearms Act. These and other requirements that were violated help ensure that persons entitled to have guns may have them and that persons not entitled to have guns are denied them. When a firearms dealer cannot account for guns or fails to ensure that guns are sold to authorized persons, the public safety is directly and meaningfully implicated. In enacting the Gun Control Act in 1968, Congress found:

> [T]he ease with which any person can acquire firearms other than a rifle or shotgun (including criminals, juveniles without the knowledge or consent of their parents or guardians, narcotics addicts, mental defectives, armed groups who would supplant the functions of duly constituted public authorities, and others whose possession of such weapons is similarly contrary to the public interest) is a significant factor in the prevalence of lawlessness and violent crime in the United States.

Omnibus Crime Control & Safe Streets Act of 1968, Pub.L. No. 90–357, § 901(a)(2), 82 Stat. 197, 225.

As ATF officers repeatedly explained to Abrams, Valley Gun's violations were not technical; they were serious, and public safety required their correction. Preventing Valley Gun from continuing its history of significant failures goes to the core of ATF's responsibilities under the Gun Control Act. Not only was ATF authorized to revoke Valley Gun's license, ATF meaningfully served the public safety in doing so.

The judgment of the district court is *AFFIRMED.*