### BEST LOAN COMPANY a/k/a Best Pawn Shop, Petitioner

v.

### Arthur W. HERBERT, Director of Industry Operations, Washington Field Division, Bureau of Alcohol, Tobacco, Firearms and Explosives, Respondent.

### Action No. 4:08cv102.

United States District Court,
E.D. Virginia,
Newport News Division.

March 6, 2009.

---

Mark A. Epstein, Esquire, Mark A. Epstein Law Offices, Baltimore, MD, for Petitioner.

Lawrence R. Leonard, Assistant United States Attorney, Norfolk, VA, for Respondent.

### MEMORANDUM OPINION AND FINAL ORDER

REBECCA BEACH SMITH, District Judge.

Best Loan Company petitions this court pursuant to 18 U.S.C. § 923(f)(3) for a *de novo* judicial review of a decision by the Bureau of Alcohol, Tobacco, Firearms and Explosives (the "ATF" or "Bureau") to revoke its license as a dealer in firearms. This matter is before the court on cross motions for summary judgment filed by Best Loan and respondent Arthur W. Herbert, the Director of Industry Operations ("DIO") for ATF's Washington Field Division. For the reasons set forth below, petitioner's motion for summary judgment is **DENIED** and respondent's motion for summary judgment is **GRANTED.**

### I. Factual and Procedural History [1]

Best Loan is a federally licensed firearms dealer in Newport News, Virginia.

---

**1.** These facts are drawn from the Certified Administrative Record, filed January 2, 2009,

Melvin and Joseph Epstein, who are father and son, respectively, received a license from ATF to deal in firearms in 1985. In January, 1988, ATF conducted a compliance inspection of Best Loan and cited the company for a violation of the Gun Control Act (the "GCA" or the "Act"); specifically, the failure to maintain an Acquisition and Disposition Record (an "A & D Record").[2] As a result of this violation, ATF issued a Report of Violations to Best Loan, documenting the company's failure to comply with the legal requirements of the GCA.[3] Subsequent ATF inspections in 1991 and 1993 disclosed no violations, indicating that Best Loan was properly maintaining an A & D Record. At the time of the 1993 inspection, Melvin Epstein was actively involved in the day-to-day operations of Best Loan. At some point after this inspection, Joseph Epstein assumed these responsibilities.

A. *The April, 2006 Compliance Inspection*

ATF did not conduct another compliance inspection of Best Loan until April 4, 2006. During this inspection, Industry Operations Investigator ("IOI") Sarah Rouse discovered that Best Loan was not currently maintaining an A & D Record, and had not maintained such a record since 1999. IOI Rouse cited Best Loan for failure to maintain an A & D Record, in violation of 18 U.S.C. § 923(g)(1)(a) and 27 C.F.R. § 478.125(e).[4] At the conclusion of this inspection, IOI Rouse discussed the violations, and necessary remedial actions, with Best Loan personnel. On May 19, 2006, Joseph Epstein signed an Acknowledgment of Federal Firearms Regulations form, both (i) indicating that IOI Rouse had reviewed with him the regulatory requirements associated with firearms dealing and answered his questions regarding the information, and (ii) certifying that he would be "responsible for familiarizing [himself] with all of the laws and regulations governing [his] licensed firearms business." Gov't Ex. 12. Best Loan then submitted a letter to ATF on June 2, 2006, detailing the steps the business was taking to remedy the violations.

Based on the violations identified in the April, 2006, inspection, ATF decided to pursue revocation of Best Loan's federal firearms license. The Bureau issued a Notice of Revocation of License, and conducted a revocation hearing on January 17, 2007. Melvin and Joseph Epstein were present at the hearing and were represented by counsel. Both parties submitted evidence, including testimony by Best Loan representatives that improvements were being made, additional remedial procedures would be implemented, and the A & D Record would be reconstructed to fully comply with ATF regulatory require-

and are uncontested unless otherwise noted.

2. Federal firearms licensees are required, by statute and regulation, to maintain an A & D Record. *See* 18 U.S.C. § 923(g)(1)(A); 27 C.F.R. § 478.125(e). Each licensed firearms dealer must maintain a bound book with a record of "each receipt and disposition of firearms," in a format prescribed by regulation. 27 C.F.R. § 478.125(e) (further describing the specific pieces of information that must be recorded in the bound book).

3. Melvin Epstein signed the Report of Violations, indicating that he had received a copy

of the report, was aware of the requirement to maintain an A & D Record, and knew the corrective actions necessary to fix the violation.

4. IOI Rouse also cited Best Loan for ten other violations of the GCA, including disposing of a firearm to a person whom the licensee has reason to believe is a prohibited person, failure to record required information regarding the transferor of a firearm, and failure to verify the identity of a firearms transferee. *See* Gov't Ex. 9.

ments. Best Loan argued that it deserved a chance to come into compliance, and that it had been disadvantaged by the thirteen-year span between ATF compliance inspections.

The Director of Industry Operations ("DIO") for the Washington Field Division, respondent Herbert, determined that Best Loan's violations were willful in nature and supported revocation of its license. Because the company had provided credible assertions that the April, 2006, inspection and resultant education would allow them to operate in a compliant manner in the future, however, the DIO determined that there was no need to revoke the license. *See* Gov't Ex. 14 at 7–8 (concluding that Best Loan "has willfully engaged in at least one violation of the Gun Control Act," but that it "will be allowed to retain the license and no further action will be taken at this time"). The DIO reiterated the company's responsibility to comply with the GCA and its implementing regulations, and noted that ATF "will hold [Best Loan] accountable for any future violations." *Id.*

On March 22, 2007, ATF Area Supervisor Chuck Turner and IOI Rouse visited Best Loan to personally deliver the DIO's decision and to conduct a warning conference. The ATF representatives reviewed all violations discovered during the April, 2006, inspection, as well as the necessary corrective actions needed to prevent the violations from recurring. The information discussed during the warning conference, including the specific violations and remedial steps required, was documented in a March 23, 2007, letter sent by Area Supervisor Turner to Joseph Epstein. The letter concluded with the following admonishment to Best Loan:

> The violations for which you were cited could adversely impact law enforcement's ability to reduce violent crime and protect the public. *You are reminded that future violations, repeat or otherwise, could be viewed as willful and may result in revocation of your license.* You may anticipate further inspections to ensure your compliance.

Gov't Ex. 15 at 3 (emphasis added). Additionally, on May 29, 2007, IOI Kim Thompson conducted an on-site ATF informational seminar to aid Best Loan employees' understanding of the regulatory requirements. IOI Thompson distributed reference materials, instructed employees about regulatory issues, answered questions, and provided reference materials and contact information for ATF resources. At the close of this seminar, Best Loan signed another Acknowledgment of Federal Firearms Regulations form, recognizing the company's awareness of the regulatory requirements.

### B. *The 2007 Compliance Inspection*

Three months after 101 Thompson's seminar, on August 27, 2007, IOI George Nadeau conducted another ATF compliance inspection. Although Best Loan had asserted at the January, 2007, revocation hearing that its A & D Record would be reconstructed and compliant with regulatory requirements, the A & D Record provided to IOI Nadeau contained significant gaps in information, including a failure to properly record the acquisition and disposition of over 700 firearms. IOI Nadeau cited Best Loan for other regulatory violations as well, including failure to report multiple sales or dispositions of handguns to the same purchaser within a period of five days, failure to properly complete an ATF Form 4473 for each firearm transfer, and failure to obtain certification that the transferee was not a non-immigrant alien. *See* Gov. Ex. 1 at 4. Based on the problems found during the inspection, some of which were repeat violations, Best Loan was again cited for violating the GCA and its implementing regulations, and a Notice of Revocation of License was served on the business on November 30, 2007.

At Best Loan's request, a hearing regarding the revocation was held on April 30, 2008. Joseph Epstein, with counsel Mark Epstein, appeared on behalf of Best Loan.[5] After considering the evidence presented at the hearing, including almost six hours of testimony, ATF Hearing Officer Michael R. Price issued a report recommending that Best Loan's firearms license be revoked based on willful violations of the GCA. DIO Herbert then reviewed this report, together with the hearing testimony and exhibits, and issued Findings of Fact and Conclusions of Law agreeing that the license should be revoked and specifically concluding that Best Loan "has willfully engaged in violations of the Gun Control Act." Admin. Ex. 3 at 11. On July 31, 2008, Best Loan was served with a Final Notice of Revocation of Firearms License.

On September 29, 2008, Best Loan filed a petition for review with this court, seeking *de novo* review of ATF's action. Respondent Herbert filed a motion for summary judgment on January 2, 2009, to which Best Loan responded on January 23, 2009. On January 28, 2009, Best Loan filed its own motion for summary judgment. Both motions are now ripe for decision.

## II. Law

■ The ATF may, after notice and opportunity for a hearing, revoke any federal firearms license, if the licensee has "willfully violated" any statute, rule, or regulation governing the firearms industry. 18 U.S.C. § 923(e). "A *single* violation is suf-

ficient for denying an application or revoking a license." *DiMartino*, 129 F.Supp.2d at 827 (emphasis in original); *accord Armalite, Inc. v. Lambert*, 544 F.3d 644, 649 (6th Cir.2008); *Willingham Sports, Inc. v. Bureau of A.T.F.*, 348 F.Supp.2d 1299, 1308 (S.D.Ala.2004), *aff'd*, 415 F.3d 1274 (11th Cir.2005).

■ A federal firearms licensee is entitled, under 18 U.S.C. § 923(f)(3), to *de novo* review in federal district court of ATF's decision to revoke its license. The reviewing court can consider any evidence submitted by the parties regardless of whether the evidence was submitted in the administrative proceeding. *See* 18 U.S.C. § 923(f)(3); *DiMartino v. Buckles*, 129 F.Supp.2d 824, 827 (D.Md.2001). If no genuine issues of material fact exist, the reviewing court can grant summary judgment without conducting an evidentiary hearing. *Id.*; *accord Stein's, Inc. v. Blumenthal*, 649 F.2d 463, 466 (7th Cir.1980) (explaining that a good reason to hold such a hearing must either appear in the administrative record, or be presented by the party petitioning for judicial review); *Perri v. Dep't of the Treasury*, 637 F.2d 1332, 1335 (9th Cir.1981) (adopting the Seventh Circuit's reasoning). Because this case presents no genuine issue of material fact that would necessitate holding an evidentiary hearing, the court declines to do so.

## III. Discussion

■ Best Loan claims the revocation of its license was improper in two respects, only one of which merits discussion.[6] Best

---

5. Along with counsel for the Bureau, employees Rouse, Nadeau, and Thompson appeared on behalf of ATF.

6. In its Petition for Judicial Review, Best Loan first argues that respondent DIO Herbert "has no standing or authority to revoke a firearms license" under the GCA, which contemplates revocation by the Attorney General. (Petition 2.) This argument has apparently been abandoned by Best Loan, as it was not

addressed in its response to Respondent's Motion for Summary Judgment, nor was it referenced in Best Loan's own Motion for Summary Judgment. In any event, as evidenced through numerous statutory and regulatory provisions, the Attorney General has clearly delegated the authority to revoke federal firearms licenses to the Director of ATF, who has delegated this authority to each Field Division's DIO. *See* 28 U.S.C. § 599A (delegating

Loan acknowledges that it did violate the GCA, but claims that these violations were "inadvertent and technical record-keeping errors," and therefore were not "willful" within the meaning of the GCA. (Petition 2.) The sole issue the court must determine, then, is whether Best Loan has raised a genuine issue of material fact about whether its violations of the GCA were willful as contemplated by 18 U.S.C. § 923(e).

■ The term "willful" is not defined within the GCA, but has been defined by several circuits to include violations by a firearms licensee who knew of his legal obligation and "purposefully disregarded or was plainly indifferent to" those obligations. *Lewin v. Blumenthal*, 590 F.2d 268, 269 (8th Cir.1979); *accord RSM, Inc. v. Herbert*, 466 F.3d 316, 321 (4th Cir.2006) (explaining that, when determining willfulness of conduct, a district court must determine "whether the acts were committed in deliberate disregard of, or with plain indifference toward, either known legal obligations or the general unlawfulness of the actions."). In the context of an omission or failure to act, such as the failure to maintain required records, "a court may infer willful omission from a [licensee's] plain indifference to a legal requirement to act if the [licensee] (1) knew of the requirement *or* (2) knew generally that his failure to act would be unlawful." *Id.* at 322 (emphasis in original); *accord On Target Sporting Goods, Inc. v. Attorney Gen. of the U.S.*, 472 F.3d 572, 575 (8th Cir.2007) ("For the government to prove a willful violation of the federal firearms statutes, it need only establish that a licensee knew of its legal obligation and purposefully disregarded or was plainly indifferent to the record-keeping requirements.") (internal quotation omitted); *Appalachian Res. Dev. Corp. v. McCabe*, 387 F.3d 461, 464 (6th Cir.2004) ("[W]here a licensee understands his or her legal obligations under the GCA, yet fails to abide by those obligations, his or her license can be denied or revoked on the basis that the dealer 'willfully' violated the GCA."); *Stein's Inc.*, 649 F.2d at 467 (the government "need only prove that the [licensee] knew of his legal obligation and purposefully disregarded or was plainly indifferent to the record-keeping requirements" in order to demonstrate a willful violation) (internal quotation omitted).

■ A firearms licensee's "repeated violations after it has been informed of the regulations and warned of violations does show purposeful disregard or plain indifference," for purposes of determining whether such violations are willful. *Willingham Sports, Inc. v. Bureau of A.T.F.*, 415 F.3d 1274, 1277 (11th Cir.2005); *accord Appalachian Res. Dev. Corp.*, 387 F.3d at 464 (affirming district court's conclusion that violations of firearm regulations were "willful" because the dealer had knowledge of its obligations under the GCA and repeatedly violated them).

During the closing conference held after the inspection in April, 2006, IOI Rouse reviewed each violation with Best Loan, and discussed the necessary remedial actions. Further, in May, 2006, Best Loan signed an Acknowledgment of Federal Firearms Regulations, demonstrating that the company understood the regulatory requirements applicable to firearms dealing. This information was rehashed at the January, 2007, license revocation hearing, as

authority to the Director of ATF to enforce federal firearms laws); 27 C.F.R. § 478.74 (explaining that the DIO shall render a decision about the revocation of a federal firearms license); ATF Order 1120.1 ("Authority to

revoke a Federal firearms license for willful violations of the Gun Control Act ... is delegated to the directors of industry operations[.]'').

well as during the warning conference held March 22, 2007. Moreover, ATF personnel held an on-site instructional seminar at Best Loan on May 29, 2007. During this seminar, IOI Thompson reviewed the pertinent regulatory requirements, instructed Best Loan employees regarding proper procedures, distributed reference materials and contact information for various ATF resources, and answered employee questions. At the close of this seminar, Best Loan signed yet another Acknowledgment of Federal Firearms Regulations form, acknowledging the company's awareness of the regulatory requirements. In short, ATF gave Best Loan every chance to bring its operation into compliance with the GCA and its implementing regulations, and Best Loan simply did not do so.

There can be no doubt that Best Loan knew the legal obligation associated with keeping an A & D Book. Representatives of the company signed two Acknowledgment of Federal Firearms Regulations forms, were present at an ATF warning conference, and benefitted from an educational seminar held by ATF personnel. In light of these efforts on ATF's part, the court concurs with DIO Herbert that Best Loan "had ample opportunity to gain the necessary knowledge of the regulatory requirements," and that its misconduct was willful. Admin. Ex. 3 at 9.

Best Loan's repeated violations, after it had been informed of the regulations, warned of its offenses, and afforded additional opportunities by ATF to come into compliance, leads this court to conclude that the company has shown "deliberate disregard" and "plain indifference" toward its obligations; and, thus, its violations were willful. *RSM, Inc.,* 466 F.3d at 322; *see also T.T. Salvage Auction Co., Inc. v. Sec'y of the Treasury,* 859 F.Supp. 977, 980 (E.D.N.C.1994) (finding willfulness based on licensee's repeated violations over three separate inspections, in spite of ATF warn-

ings, notification, and instruction about corrective actions). As such, this court concurs with the Hearing Officer and DIO Herbert that the magnitude of the violations, in light of Best Loan's specific compliance history, "goes beyond 'careless' violations and is too significant to overlook." Admin. Ex. 3 at 10.

Best Loan does acknowledge that it "committed some repeat violations" of the GCA, but attempts to minimize the importance of these violations by characterizing them as "inadvertent," "minor," and "not egregious." Opp'n Br. 5, 11. This court cannot countenance such a cavalier view of the mandates of the GCA. "Improper recordkeeping is a serious violation. When the Act was enacted, Congress 'was concerned with the widespread traffic in firearms and with their general availability to those whose possession thereof was contrary to the public interest.' " *Fin & Feather Sport Shop, Inc. v. U.S. Treasury Dep't,* 481 F.Supp. 800, 806 (D.Neb.1979) (quoting *Huddleston v. United States,* 415 U.S. 814, 824, 94 S.Ct. 1262, 39 L.Ed.2d 782 (1974)). Best Loan, by failing to keep the required records, has "seriously undermine[d] the effectiveness and purpose of the Act and ultimately endanger[ed] society." *Id.*

In sum, a "history of repeated failures, warnings, and explanations of the significance of the failures, combined with knowledge of the legal obligations, readily amounts to willfulness as used in 18 U.S.C. § 923(e)." *RSM, Inc.,* 466 F.3d at 322. The uncontroverted evidence demonstrates that Best Loan was well aware of its obligations under the law and continued to violate those obligations. Best Loan has failed to produce evidence establishing that a genuine issue of material fact exists whether its continued and repeated violations were willful failures to comply with

the GCA. Summary judgment for respondent is appropriate.

### IV. Conclusion

For the foregoing reasons, and pursuant to its 18 U.S.C. § 923(f)(3) *de novo* judicial review, the court **GRANTS** respondent's motion for summary judgment and **DENIES** petitioner's motion for summary judgment. The Clerk shall enter judgment for the respondent. The Clerk is further **DIRECTED** to send a copy of this Memorandum Opinion and Final Order to counsel for both parties.

**IT IS SO ORDERED.**