

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-10-2008

# Vineland Fireworks v. Bur Alcohol Tobacco

Precedential or Non-Precedential: Precedential

Docket No. 07-2381

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Vineland Fireworks v. Bur Alcohol Tobacco" (2008). *2008 Decisions.* Paper 285.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/285

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 07-2381

———

VINELAND FIREWORKS CO., INC.,

Petitioner

v.

BUREAU OF ALCOHOL, TOBACCO,
FIREARMS & EXPLOSIVES

———

On Petition for Review from an
Order of the United States Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives
(Nos. 8-NJ-011-50-6D-00010 and 8-NJ-011-24-4F-00196)

———

Argued June 3, 2008
Before: FISHER and JORDAN, *Circuit Judges*,
and YOHN,* *District Judge*.

———

*The Honorable William H. Yohn Jr., United States
District Judge for the Eastern District of Pennsylvania, sitting by
designation.

(Filed: October 10, 2008)

Don P. Foster (Argued)
Klehr, Harrison, Harvey, Branzburg & Ellers
260 South Broad Street, Suite 400
Philadelphia, PA  19102
    *Attorney for Petitioner*

Kelsi B. Corkran (Argued)
United States Department of Justice
Appellate Section
950 Pennsylvania Avenue, N.W.
Washington, DC  20530

Mark B. Stern
United States Department of Justice
Civil Division, Appellate Staff
601 D Street, N.W.
Washington, DC  20530
    *Attorneys for Respondent*

———

OPINION OF THE COURT

———

FISHER, *Circuit Judge*.

Vineland Fireworks Co., Inc. ("Vineland") appeals the decision of the Acting Director ("Director") of the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF") to revoke its

2

license to manufacture fireworks and to deny its application for the renewal of its license to import fireworks. The Director found that Vineland's failure to keep records of its daily summary of magazine transactions on thirty-six occasions over the course of many months constituted a willful violation of 18 U.S.C. § 842(f) and 27 C.F.R. § 555.127. We hold that the Director's interpretation of "willful" is reasonable, and substantial evidence supports its finding that Vineland "willfully violated" the above provisions. For the reasons that follow, we will deny the petition for review of the Director's order.

I.

Vineland is a fireworks manufacturer and distributor owned and operated by Rose Pacitto with locations in Vineland, New Jersey and Coamo, Puerto Rico. Vineland applied for and became licensed by ATF in March 2000. For approximately eleven years prior to her application, Pacitto worked at Fireworks by Girone, a fireworks manufacturer and distributor owned and operated by Felix Girone, Pacitto's former husband. Fireworks by Girone operated out of the same site that later became Vineland.

In 1999, the United States Attorney for the District of New Jersey indicted Fireworks by Girone for knowingly and willfully manufacturing explosive materials without keeping proper records, in violation of 18 U.S.C. §§ 2, 842(f), and 844(a). The indictment stemmed from ATF inspections in 1995 and 1996, in which inspectors found that Fireworks by Girone had manufactured thousands of explosive devices without record and had improperly stored the devices. The investigators

discussed the violations with Pacitto at that time because the company's federal explosives license listed her as a "responsible person."[1] Fireworks by Girone pleaded guilty to the charge, and Pacitto (then as Rose Girone) signed the plea agreement. Subsequently, ATF revoked Fireworks by Girone's license.

In November 2000, after Fireworks by Girone's license was revoked and Pacitto had begun operating on the site under the new license for Vineland, ATF contacted Pacitto and informed her of its earlier inspection of Fireworks by Girone in July 1999 and the violations it found. In particular, these violations included "failure to maintain records of the daily magazine transactions for explosives" for approximately a two-week period in violation of 27 C.F.R. § 555.127. On December 20, 2000, ATF and Pacitto met to discuss these violations, and ATF instructed Pacitto on the requirements for compliance with federal explosives law.[2]

---

[1]A "responsible person" is "[a]n individual who has the power to direct the management and policies of the applicant pertaining to explosive materials." 27 C.F.R. § 555.11.

[2]Neither the Administrative Law Judge, nor the Director, attributed the July 1999 violations to Vineland.

4

On July 2, 2003,[3] ATF conducted a safety walk-through inspection of Vineland, and it cited Vineland for two violations: (1) pre-loading trucks with explosives without a pre-loading variance; and (2) improperly storing fireworks. On July 2, 2004, ATF again conducted a safety walk-through inspection of Vineland, and it cited Vineland for three violations: (1) pre-loading trucks with explosives without a pre-loading variance; (2) improperly storing fireworks and high explosive bulk salutes; and (3) failing to keep proper records of fireworks and salutes. Pacitto signed the violations report, and on August 4, 2004, she met with ATF to discuss the violations in a "warning conference." Subsequently, ATF sent Pacitto a letter, stating: "You are reminded that future violations, repeat or otherwise, could be viewed as willful and may result in the revocation of your license."

On October 13, 2004, ATF again conducted a safety walk-through inspection of Vineland. The ATF inspectors found a number of violations, and on August 22, 2005, the Director of Industry Operations ("DIO") for the Philadelphia Field Division of ATF issued a notice of revocation of Vineland's license to manufacture explosives pursuant to 18 U.S.C. § 843(d). The DIO also issued a notice denying

---

[3]ATF inspectors visited Vineland in October 2001 and December 2002, but did not issue citations. ATF and Vineland argue as to whether these inspections were full inspections of Vineland's premises, but this dispute is irrelevant to our resolution of this appeal.

Vineland's application for a renewal of its license to import fireworks pursuant to 18 U.S.C. § 843(b).

On July 25, 2005, ATF inspectors conducted a safety walk-through inspection of Vineland's facility in Puerto Rico and found a number of additional violations. On December 2, 2005, the DIO amended the notices to include these additional violations. The amended notices set forth thirteen violations, each of which charged that Vineland had "willfully failed" to comply with federal laws and ATF regulations. We summarize the charged violations as follows:

> (1)     Willful failure to properly store explosive materials in violation of 18 U.S.C. § 842(j) and 27 C.F.R. §§ 555.29, 555.201, 555.203(d), 555.210, and 555.215. Vineland stored twenty-five pounds of deteriorated stars in a trailer that also contained deteriorated chemicals, and the trailer was not an approved type 4 magazine.

> (2)     Willful failure to properly store explosive materials in violation of 18 U.S.C. § 842(j) and 27 C.F.R. §§ 555.29 and 555.224. Vineland had three magazines within 200 feet of the trailer in count (1) and less than 300 feet from a road.

> (3)     Willful failure to properly store explosive materials in violation of 18 U.S.C. § 842(j) and 27 C.F.R. §§ 555.29, 555.210, and

6

555.215.  On October 13, 2004, Vineland did not have "adequate locks, hoods[,] and hinges" on its storage containers.

(4)　　Willful failure to properly maintain records in violation of 18 U.S.C. § 842(f) and 27 C.F.R. § 555.127.  Between July 2, 2003 and October 13, 2004, Vineland did not state the method it used to count explosive materials on ten occasions in its daily summary of magazine transactions.

(5)　　Willful failure to properly maintain records in violation of 18 U.S.C. § 842(f) and 27 C.F.R. § 555.127.  On six occasions between July 1, 2004 and October 13, 2004, Vineland failed to enter the manufacturer's name or brand name of explosive materials, the total quantity of materials received in and removed from each magazine during the day, and the total remaining quantity at the end of the day in its daily summary of magazine transactions.

(6)　　Willful failure to properly maintain records in violation of 18 U.S.C. § 842(f) and 27 C.F.R. § 555.127.  On thirty occasions between January and August 2004, Vineland committed the same violation as in count (5).

(7)　　Willful failure to properly maintain records in violation of 18 U.S.C. § 842(f) and 27

7

C.F.R. § 555.109(a). Between July 2, 2003 and October 13, 2004, Vineland did not properly mark 12 cannon shots with the correct name and location of the manufacturer.

(8) Willful failure to properly maintain records in violation of 18 U.S.C. § 842(f) and 27 C.F.R. § 555.123(b). Between July 2, 2003 and October 13, 2004, Vineland did not enter the proper records regarding the cannon shots mentioned in count (7).

(9) Willful failure to properly store explosive materials in violation of 18 U.S.C. § 842(j) and 27 C.F.R. §§ 555.201(f). Between July 9, 2004 and July 25, 2005, Vineland did not notify the local fire safety officials of the location and other information of the explosive materials at its facility in Puerto Rico.[4]

(11) Willful failure to properly maintain records in violation of 18 U.S.C. § 842(f) and 27 C.F.R. § 555.127. Between January 13, 2005 and January 17, 2005, Vineland did not enter a separate record stating the dates of distribution of explosive materials on two occasions at its facility in Puerto Rico.

---

[4]ATF dismissed Violation 10.

(12)    Willful failure to properly store explosive materials in violation of 18 U.S.C. § 842(j) and 27 C.F.R. § 555.215.  Between July 9, 2004 and July 25, 2005, Vineland did not keep the area surrounding a magazine clear of brush and grass at its facility in Puerto Rico.

(13)    Willful failure to post license in violation of 18 U.S.C. § 843(g) and 27 C.F.R. § 555.101.  On July 26, 2005, Vineland did not have its license posted at its facility in Puerto Rico.

Vineland requested a hearing before an Administrative Law Judge ("ALJ").  The central question of the hearing was whether Vineland's violations were willful.  For an entity to import, manufacture, or deal in explosive materials, it must have a license.  *See* 18 U.S.C. § 843.  However, an entity that has "willfully violated any of the provisions of this chapter [18 U.S.C. §§ 841 *et seq.*] or regulations issued hereunder" cannot obtain a license.  *Id.* § 843(b)(2).  If a licensee has violated any provision, including those provisions governing the way in which a licensee obtains its original license, ATF may revoke its license or deny the renewal application for its license.  *See id.* § 843(a) ("Each license or permit shall be renewable upon the same conditions and subject to the same restrictions as the original license or permit[.]"); *id.* § 843(d) ("The Attorney General may revoke any license or permit issued under this section if in the opinion of the Attorney General the holder thereof has violated any provision of this chapter or any rule or regulation prescribed by the Attorney General under this

9

chapter[.]"). Thus, ATF may deny the renewal of a license or revoke a license if the licensee has "willfully violated" the statutory provisions or ATF regulations. *See id.* § 843(a), (b)(2), (d).

On February 23, 24, and 27, 2006, an ALJ of the United States Environmental Protection Agency presided over the hearing on these violations. On June 2, 2006, the ALJ issued a Recommended Decision, in which he recommended reversing the revocation of the license and the denial of the renewal application for the license, finding that the violations were not willful.

On June 15, 2006, the DIO filed a petition for review with the Director. On April 17, 2007, the Director issued his Order, affirming in part and reversing in part the ALJ's Recommended Decision. The Director affirmed the ALJ's decision as to Violations 3, 4, 9, and 13, finding that Vineland did not willfully commit these violations.[5] However, the Director reversed the ALJ's decision as to the remaining violations, finding that those violations were willful. As a result, he directed that Vineland's licenses be immediately revoked.[6] This timely appeal followed.

_____

[5]ATF does not appeal the Director's decision with respect to those violations.

[6]On June 22, 2007, this Court granted an emergency motion staying the revocation of Vineland's license pending review of the Director's order.

10

## II.

We have jurisdiction to review the Director's decision to revoke an explosives license and deny a renewal application pursuant to 18 U.S.C. § 843(e)(2) and 5 U.S.C. § 704. We review the Director's decision, which is the final order revoking Vineland's license and denying its renewal application. *See* 18 U.S.C. § 843(e)(2).[7] We review the decision using the judicial standards of review set forth in 5 U.S.C. § 706. *See* 18 U.S.C. § 843(e)(2). To the extent that this appeal challenges the Director's interpretation of the statutory provisions ATF administers, we utilize principles of *Chevron* deference. *See* *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

## A.

Vineland argues that the Director did not limit his review of the ALJ's decision to a determination of whether it was "arbitrary and capricious," and he should have so limited his standard of review pursuant to 27 C.F.R. § 555.79. We review an agency's decision to apply a particular standard of review to determine if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also Chen v. Gen. Accounting Office*, 821 F.2d 732, 734 (D.C. Cir. 1987) ("[A] board decision that applied the wrong

---

[7]The ALJ's decision is the final decision only if the Director affirms the decision. *See* 27 C.F.R. § 555.79.

standard of review to the decision of its hearing examiner would
. . . be arbitrary and capricious and contrary to law.").

The Administrative Procedure Act ("APA"), 5 U.S.C.
§§ 500-596, governs the way in which administrative agencies
function. It provides that, where an agency reviews an ALJ's
decision, "the agency has all the powers which it would have in
making the initial decision except as it may limit the issues on
notice or by rule." 5 U.S.C. § 557(b). Thus, Congress permits
the agency to limit its review using its regulation-promulgating
powers, but if it chooses not to do so, it exercises de novo
review over the ALJ's decision. *See id.*[8]

We must determine whether ATF issued a regulation that
limited the Director's review of an ALJ's decision because if it
did not, the Director exercises de novo review over the ALJ's
decision as provided in § 557(b). ATF has promulgated a
regulation governing appeals involving the revocation of an

---

[8]In pertinent part, the statute provides:
When the presiding employee makes an initial
decision, that decision then becomes the decision
of the agency without further proceedings unless
there is an appeal to, or review on motion of, the
agency within time provided by rule. On appeal
from or review of the initial decision, the agency
has all the powers which it would have in making
the initial decision except as it may limit the
issues on notice or by rule.
5 U.S.C. § 557(b).

12

explosives license. *See* 27 C.F.R. § 555.79.[9] Section 555.79 provides that, following the ALJ's initial decision, either party may appeal to the Director by filing a petition for review. It further states: "The petition will set forth facts tending to show (a) action of an arbitrary nature, (b) action without reasonable warrant in fact, or (c) action contrary to law and regulations." *Id.*

We cannot conclude that this regulation limits the Director's standard of review because the regulation instructs the petitioner, not the Director. *See id.* (informing the petitioner that "[t]he petition will set forth" facts showing these types of actions). The text of the regulation does not limit the Director's review to the three listed types of errors. *See id.* Moreover, even assuming that it did, it does not include particular standards of review for each error. For example, an "action contrary to law and regulations" does not provide a standard of review, but is simply a type of error.[10] Therefore, we cannot conclude that

---

[9]Both parties cite to 27 C.F.R. § 71.116 for various propositions, but this section governs the Director's review of permit proceedings of the Tobacco Tax and Trade Bureau of ATF. While this section is similar to § 555.79, we will limit our discussion to § 555.79 as that is the applicable section.

[10]As a result, we reject Vineland's argument that the Director should have reviewed the ALJ's conclusions for whether the ALJ was arbitrary and capricious. The text of the regulation invites petitions that seek review not only of an action that is arbitrary, but also of an action that is without reasonable

ATF expressly limited the Director's standard of review of the ALJ's decision pursuant to 5 U.S.C. § 557(b).[11]

Vineland argues, however, that we should conclude that ATF implicitly limited the Director's review to an "arbitrary and capricious" standard because "the regulation is so similar" to the

---

warrant in fact, or is contrary to law. *See* 27 C.F.R. § 555.79. Thus, it clearly does not limit the Director's review to an "arbitrary and capricious" standard. *See id.*

[11]To the extent that Vineland argues that our decision in *Kowalchick v. Director, Office of Workers' Compensation Programs*, 893 F.2d 615, 619-20 (3d Cir. 1990), compels a different conclusion, its argument is unavailing. In *Kowalchick*, we stated that the Benefits Review Board for the Office of Workers' Compensation reviews an ALJ's determination for substantial evidence. However, we made that determination because Congress expressly declared that, under the Longshore and Harbor Workers' Compensation Act, the Benefits Review Board must review the hearing record for substantial evidence. *See* 33 U.S.C. § 921(b)(3); *see also* 20 C.F.R. § 802.301 (stating that the Benefits Review Board "is not empowered to engage in a de novo proceeding" but must instead conduct a review for substantial evidence). In the present case, Congress has not imposed any similar standard of review on the Director of ATF, nor has ATF expressly declared its standard of review. Thus, *Kowalchick* is clearly distinguishable from the present case and does not require a different result.

14

APA provision governing judicial review of an agency's decision. The APA provides:

> The reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be--
>
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> (B) contrary to constitutional right, power, privilege, or immunity;
>
> (C) in excess of statutory jurisdiction, authority, or limitations . . . ;
>
> (D) without observance of procedure required by law;
>
> (E) unsupported by substantial evidence . . . ; or
>
> (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

5 U.S.C. § 706(2).

In comparing the ATF regulation with the judicial review standards set forth in § 706(2), we cannot conclude that the ATF

15

regulation so closely parallels the judicial review standards that we can infer that ATF intended to adopt those standards. First, while § 706(2) expressly provides that a court must use the listed standards of review in reaching its decision, the ATF regulation does not instruct the Director to consider these three listed types of actions as its standards of review. *See* 27 C.F.R. § 555.79. Second, the ATF regulation does not mirror the language of § 706(2). Although both the ATF regulation and § 706(2) contemplate challenges for actions that are arbitrary, unwarranted by the facts, or contrary to law, § 706(2) expressly provides standards of review for each type of action while 27 C.F.R. § 555.79 does not, particularly for "actions contrary to law."

Had ATF intended to limit its standard of review in a way similar to the APA, we believe it would have more closely mirrored the statute in its regulation. For example, in *Chen*, the Court of Appeals for the District of Columbia held that the General Accounting Office Personnel Appeals Board ("Board") limited its standard of review of a decision by a single member of the Board. 821 F.2d at 737-38. It found that the applicable standards under the Board's regulation "mirror[ed]" the judicial review standards under both the APA and the Board's organic statute, both of which limited judicial review to a substantial evidence standard. *Id.* at 735-36. It further found that, in promulgating the regulation, the Board stated that it intended for its standard of review to mirror the judicial review standards of § 706(2). *Id.* As a result, the court concluded: "It seems clear that the [Board]'s new regulations give it only 'appellate review' powers and not de novo review authority to reopen and review [an] individual member's decisions." *Id.*; *see also id.* at 737-38.

16

The ATF regulation at issue in the present case is not similar to the one in *Chen*, 821 F.2d at 734-38. As noted above, the ATF regulation, 27 C.F.R. 555.79, does not require the Director to conduct its analysis using those particular standards of review. Additionally, it does not "mirror" the APA standards by stating that the Director should review the ALJ's conclusions for substantial evidence. *See id.* Finally, and most importantly, unlike in *Chen*, 821 F.2d at 737-38, ATF did not state that it intended for the Director's standards of review to be the same as the judicial standards of review. For all of these reasons, we conclude that the D.C. Circuit's decision in *Chen* supports our conclusion that, had ATF intended to limit its standard of review, it would have used more particular language to do so.

Based on the foregoing, we cannot conclude that ATF has limited the Director's standard of review of the ALJ's decision pursuant to 5 U.S.C. § 557(b). As a result, § 557(b)'s mandate that "the agency has all the powers which it would have in making the initial decision" remains intact. Therefore, to the extent that the Director exercised de novo review over the ALJ's decision, it was not an abuse of discretion for him to do so.

B.

Vineland argues that the Director erred in his interpretation of "willful" under 18 U.S.C. § 843(b)(2). Where, as here, Congress has implicitly delegated powers to an agency, we must give the agency's interpretation deference so long as it

17

is reasonable.  *See Chevron*, 467 U.S. at 844.[12]  For the

[12]While the APA, 5 U.S.C. § 706, generally governs our review, we utilize *Chevron* deference principles for questions of law "where Congress delegated authority to the agency generally to make rules carrying the force of law, and . . . the agency interpretation claiming deference was promulgated in the exercise of that authority."  *United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001).  In the present case, ATF's authority is derived from Congress's delegation of the licensing of explosives manufacturers, distributors, and importers to the Attorney General.  *See* 18 U.S.C. § 843.  ATF exercises the authority to revoke a license or deny the renewal of a license pursuant to § 843(e)(2).

Under *Chevron*, we must first ask "whether Congress has directly spoken to the precise question at issue" because if it has, we "must give effect to the unambiguously expressed intent of Congress."  *See Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984).  Here, Congress has not provided any definition for the term "willful" within this statutory scheme.  *See* 18 U.S.C. § 843.  Moreover, the word "willful" has many meanings, and its meaning usually depends on the circumstances of its use, including whether it applies in the civil or criminal context.  *See Bryan v. United States*, 524 U.S. 184, 191 (1998).  Thus, we conclude that Congress has not provided an "unambiguously expressed intent" as to the meaning of "willful."  *See Chevron*, 467 U.S. at 842-43.  Therefore, *Chevron* deference applies, and we must give the agency's interpretation deference so long as it is a reasonable construction of the statute.  *See id.* at 844.

following reasons, we conclude that the Director's interpretation of "willful" under § 843(b)(2) is reasonable.[13]

1.

The Director interpreted "willfulness" under § 843(b)(2) as "plain indifference to, or intentional disregard of, a known legal duty." He further stated that a licensee has willfully violated the regulations "if, with knowledge of what the regulations require, the dealer repeatedly violates those regulations." However, he rejected the ALJ's interpretation of willfulness to the extent that the ALJ stated that it required a "bad purpose" and permitted a "justifiable excuse" defense. The Director stated: "Willfulness does not require proof that Vineland acted with the specific purpose to disobey the law."[14]

---

[13]At oral argument, ATF agreed that it should have cited *Chevron* initially, explaining that at the time it submitted its brief, it did not realize Vineland was arguing for anything less than *Chevron* deference, and asked us to employ such a standard in reviewing the agency's interpretation of the statute.

[14]To the extent that Vineland suggests that the ALJ did not require a bad purpose, we reject its assertion. The ALJ adopted the language in Vineland's reply brief requiring an "act[] in defiance of the law with no justification." Moreover, he then found that Vineland had not "acted with the purpose to disobey the law" and that "it was not [Pacitto's] intention to willfully ignore the record keeping requirements." Thus, the ALJ's rule of law and subsequent findings demonstrate that he

19

We must determine whether the Director's interpretation of what constitutes a "willful" violation pursuant to § 843(b)(2) is reasonable, and we conclude that it is. First, the Director's interpretation is in accord with the legal definition of "willful," which is "[v]oluntary and intentional, but not necessarily malicious." Black's Law Dictionary 1630 (8th ed. 2004). Black's Law Dictionary further defines "willfulness" as "[t]he voluntary, intentional violation or disregard of a known legal duty." *Id.* Like the Director's interpretation of "willful" and "willfulness," these definitions require knowledge of the conduct, but they do not require a bad purpose or allow for a justifiable excuse.[15]

Furthermore, the Director's definition is in accord with Courts of Appeals addressing what constitutes a "willful"

---

did, in fact, require a showing that Vineland had acted with a bad purpose in violating the ATF regulations.

[15]Vineland points to notes in the fourth edition of Black's Law Dictionary; Vineland claims these notes state that a willful act must be done "without justifiable excuse." However, the current edition of Black's Law Dictionary does not allow for a justifiable excuse. To the extent that the current edition discusses the requirement of a "bad purpose," it is limited to a discussion in the notes of what are "willful" actions in the context of a criminal statute.

20

violation in a similar context – firearms licensing.[16] Firearms licensing is similar to explosives licensing because ATF administers both firearms licensing and explosives licensing, and the statutory provisions governing the revocation of each type of license require that the licensee has "willfully violated" a statutory provision or a regulation. *Compare* 18 U.S.C. § 923(e), *with id.* § 843(b)(2). Thus, firearms licensing is analogous to explosives licensing, and it is a useful framework for interpreting the term "willful."

The six Courts of Appeals addressing what constitutes a "willful" violation of the firearms licensing provisions have agreed on an interpretation, holding that a firearms dealer's violation is willful where he "knew of his legal obligation and purposefully disregarded or was plainly indifferent to the . . .

---

[16]While no other Court of Appeals has addressed the interpretation of "willful" in the context of explosives licensing, several Courts of Appeals have done so in the context of firearms licensing. *See RSM, Inc. v. Herbert*, 466 F.3d 316 (4th Cir. 2006); *Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 415 F.3d 1274 (11th Cir. 2005); *Appalachian Res. Dev. Corp. v. McCabe*, 387 F.3d 461 (6th Cir. 2004); *Perri v. Dep't of the Treasury*, 637 F.2d 1332 (9th Cir. 1980); *Stein's Inc. v. Blumenthal*, 649 F.2d 463 (7th Cir. 1980); *Lewin v. Blumenthal*, 590 F.2d 268, 269 (8th Cir. 1979).

requirements."[17]  *Lewin v. Blumenthal*, 590 F.2d 268, 269 (8th Cir. 1979); *see also RSM, Inc. v. Herbert*, 466 F.3d 316, 322 (4th Cir. 2006) (requiring either "deliberate disregard" or "plain indifference"); *Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 415 F.3d 1274, 1276 (11th Cir. 2005) (same); *Appalachian Res. Dev. Corp. v. McCabe*, 387 F.3d 461, 464 (6th Cir. 2004) (same); *Perri v. Dep't of the Treasury*, 637 F.2d 1332, 1336 (9th Cir. 1980) (same); *Stein's Inc. v. Blumenthal*, 649 F.2d 463, 467 (7th Cir. 1980) (same). A number of these Courts of Appeals have expressly stated that, in finding willfulness, there is no requirement of bad purpose. *See Willingham*, 415 F.3d at 1276; *Appalachian Res. Dev.*, 387 F.3d at 465; *Cucchiara v. Sec'y of the Treasury*, 652 F.2d 28, 30 (9th Cir. 1981); *Stein's*, 649 F.2d at 467; *Lewin*, 590 F.2d at 269.  Instead, these Courts merely require violation of the regulations with knowledge of their requirements.  *See RSM*, 466 F.3d at 321-22; *Willingham*, 415 F.3d at 1276; *Appalachian Res. Dev.*, 387 F.3d at 464; *Cucchiara*, 652 F.2d at 30; *Stein's*, 649 F.2d at 469; *Lewin*, 590 F.2d at 269.  Finally, they have

---

[17]We note that, for firearms licensing, District Courts must conduct a de novo review of the denial or revocation of a license. *See id.* § 923(f)(3). Thus, a Court of Appeals review of the District Court's decision is also de novo.  *See*, *e.g.*, *Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 415 F.3d 1274, 1275-76 (11th Cir. 2005).  Congress has not provided us with de novo review of the denial or revocation of an explosives license, *see* 18 U.S.C. § 823(e)(2), and for the reasons described above, *Chevron* deference applies.

22

never permitted a "justifiable excuse" defense. *See*, *e.g.*, *RSM*, 466 F.3d at 321 (rejecting the licensee's arguments that the violations were not willful, but instead were inadvertent errors due to a high volume of sales). Here, the Director's interpretation of what constitutes a "willful violation" under § 843(b)(2) follows the Courts of Appeals' interpretations of what constitutes a "willful violation" under § 923(e), and we conclude that it is reasonable.[18]

---

[18]Vineland argues that we should reject the Director's interpretation because we have required a bad purpose for a finding of willfulness in the context of OSHA. Vineland relies on the following statement: "Willfulness connotes defiance or such reckless disregard of consequences as to be equivalent to a knowing, conscious, and deliberate flaunting of the Act. Willful means more than [a] merely voluntary action or omission[;] it involves an element of obstinate refusal to comply." *Babcock & Wilcox Co. v. Occupational Safety & Health Rev. Comm'n*, 622 F.2d 1160, 1165 (3d Cir. 1980) (internal quotation marks and citation omitted).

In *Babcock*, we noted that our language had created a "supposed conflict" with other Courts of Appeals, which believed that we required a "bad purpose" for a finding of willfulness. *Id.* at 1167. Those courts disagreed with a "bad purpose" requirement, holding that "willful" meant an "intentional disregard of, or plain indifference to" the requirements. *Id.* We rejected the view that any conflict existed, stating that we did not have a different standard, only different verbiage. *Id.* Furthermore, our subsequent decisions have endorsed the verbiage of the other Courts of Appeals. *See*,

Vineland suggests that we should require the following circumstantial evidence to support a finding of willfulness: (1) a pattern of repeated violations, which includes (a) more than one violation of the same kind and (b) temporal proximity between the two violations; and (2) specific, ongoing warnings by ATF to correct the violation. Vineland admits that it does not have case law to support this "intuitive definition." However, we must review the Director's interpretation to determine if it is reasonable, not to determine if a better definition exists. Thus, we cannot adopt Vineland's definition.

Based on the foregoing, the Director's interpretation of what constitutes a "willful violation" of § 843(b)(2) is reasonable.

2.

The Director concluded that a licensee's corrective actions "have no bearing" on a determination of whether the licensee has "willfully violated" federal explosives laws or

---

*e.g.*, *Bianchi Trison Corp. v. Chao*, 409 F.3d 196, 208 (3d Cir. 2005) ("Although the [OSH] Act does not define the term willful, courts have unanimously held that a willful violation of the [OSH] Act constitutes 'an act done voluntarily with either an intentional disregard of, or plain indifference to, the [OSH] Act's requirements.'" (internal citation omitted)). Thus, Vineland's argument that we should reject the Director's interpretation because of our previous statement in *Babcock* is unavailing.

regulations. Vineland argues that its future compliance is relevant to the willfulness determination. We hold that the Director's conclusion is reasonable.

The statutory provision requires a determination of whether the licensee "willfully violated" federal explosives laws or regulations. *See* 18 U.S.C. §§ 843(b)(2), (d). This determination is not based on the future conduct of the licensee, i.e., whether it will "willfully violate" the laws, and it is not based on a combination of the past, present, and future conduct of the licensee, i.e., whether the licensee has "willfully violated" the laws, is continuing to "willfully violate" the laws, and will "willfully violate" the laws tomorrow. Instead, the inquiry turns on the past conduct of the licensee. *See id.* Based on this statutory language, the Director's conclusion – that the likelihood that the licensee will correct the violations is not relevant to whether the licensee has "willfully violated" the regulations – is reasonable.

Additionally, the Director's conclusion is reasonable because it is again in agreement with other federal courts addressing this argument in the context of firearms licensing. For example, the Court of Appeals for the Ninth Circuit has stated that events occurring after the regulations have been violated are not relevant to a determination of whether the violations were willful at the time they occurred. *Cucchiara*, 652 F.2d at 30 (stating that the licensee's correction of its recordkeeping system subsequent to the license revocation "is immaterial to the question of willfulness at the time the violations occurred"); *see also T.T. Salvage Auction Co. v. Sec'y, U.S. Dep't of Treasury*, 859 F. Supp. 977, 979 (E.D.N.C.

1994) (holding that evidence of corrective actions is "irrelevant under the statute because the statute focuses on the willfulness of the violations and the compliance of the firearms dealer before the license was revoked").

Vineland's arguments do not persuade us that the Director's conclusion was unreasonable. Vineland first argues that 27 C.F.R. § 555.71 requires a finding of the likelihood of future compliance prior to revocation of the license. Section 555.71 discusses the "opportunity for compliance" that ATF must afford its licensees. It provides: "[N]o license or permit will be revoked or renewal application denied without first calling to the attention of the licensee or permittee the reasons for the contemplated action and affording him an opportunity to demonstrate or achieve compliance with all lawful requirements." 27 C.F.R. § 555.71. However, this regulation expressly excludes "cases of willfulness" as long as the regional director alleges willfulness in his "notice of denial of an application or revocation of a license or permit." *Id.* Therefore, where, as here, the notice the licensee received from the DIO alleged willfulness, the licensee need not be afforded an opportunity to comply prior to revocation or denial of renewal of a license.

Vineland next argues that the Director's interpretation conflicts with his prior opinion in *In the Matter of Luna Tech, Inc. d/b/a Pyropak*, Order of the Director, June 13, 2005 ("*Luna Tech*"), in which he considered the licensee's future compliance. However, to the extent that the Director considered the licensee's future compliance in *Luna Tech*, he did so in analyzing whether the licensee should be permitted an

26

opportunity to comply pursuant to § 555.71. As noted, § 555.71 does not apply here, and thus, we are not persuaded that the Director's conclusion was unreasonable in this case.

Based on the foregoing, the Director's conclusion that the potential for future compliance is not relevant to a determination of willfulness is reasonable.

3.

The Director concluded that ATF's failure to cite a violation did not preclude ATF from citing the licensee in a subsequent inspection for the same violation unless the licensee demonstrated that ATF had affirmatively misled the licensee as to the requirements. Vineland challenges this conclusion, arguing that "the prior inspection history is relevant to the issue of willfulness." We hold that the Director's conclusion is reasonable.

The Director's interpretation of "willfulness" placed the focus on whether the licensee had the requisite knowledge of the requirements yet failed to comply with them. If the licensee had knowledge of the requirements, whether ATF had previously cited the licensee would be irrelevant to a determination of "willfulness" unless ATF had affirmatively told the licensee that it was in compliance. Thus, based on the Director's interpretation of "willfulness," this further interpretation is reasonable.

Additionally, the Director's conclusion is reasonable because it is in accord with a District Court's interpretation of

27

"willfulness" in the context of firearms licensing. *See Breit & Johnson Sporting Goods, Inc. v. Ashcroft*, 320 F. Supp. 2d 671, 680 (N.D. Ill. 2004). In *Breit*, the licensee argued that ATF should not be able to revoke its license because ATF had not cited it for previous violations. *Id.* at 680. The court rejected this "equitable estoppel" argument because the licensee had knowledge of the requirements and could not demonstrate that ATF had misled it. *Id.* The Director's conclusion is in accord with this decision, and thus, it is reasonable.[19]

Based on the foregoing, the Director's conclusion is reasonable.

## C.

Vineland argues that the Director erred in concluding that Vineland "willfully violated" ATF's regulations in Violations 1, 2, 5, 6, 7, 8, 11, and 12. We review the Director's conclusion that Vineland "willfully violated" the ATF regulations for

---

[19]To the extent that Vineland argues that the holding of *Breit* was "completely irrelevant" to the present case, we find its argument unavailing. Contrary to Vineland's assertion, the ALJ categorized Vineland's argument as an estoppel-based argument. Moreover, the ALJ concluded that several violations were not willful because ATF had not previously cited Vineland, and the ALJ did not require evidence that ATF had misled Vineland as to the requirements. Thus, *Breit* was directly on point with the present case, and the Director's analogy to it was reasonable.

28

substantial evidence using the Director's reasonable interpretation of what constitutes a willful violation. *See* 5 U.S.C. § 706(E) (stating that the standard of review for adjudicatory proceedings is whether the decision is "unsupported by substantial evidence"); *see also* 18 U.S.C. § 843(e)(2) (stating that the court of appeals will review the decision pursuant to 5 U.S.C. §§ 701-706). We conclude that substantial evidence supports the Director's decision that Vineland "willfully violated" 18 U.S.C. § 842(f) and 27 C.F.R. § 555.127 by failing to keep proper records in its daily summary of magazine transactions as charged in Violations 5 and 6.

In the ALJ's Recommended Decision, he found that while the charged incidents in Violations 5 and 6 had occurred, Vineland had not "willfully violated" 18 U.S.C. § 842(f) and 27 C.F.R. § 555.127 in failing to keep proper records. The Director disagreed with the ALJ, finding that Vineland had "willfully violated" the applicable law and regulation. The Director acknowledged that Pacitto's bookkeeper, Adele Huryn, missed work during the relevant months for cancer treatments.[20] However, he found that, while Huryn's illness was unfortunate, it could not negate a finding of willfulness as to Pacitto.

---

[20]At the hearing, both Pacitto and her bookkeeper, Adele Huryn, testified. Huryn stated that she was diagnosed with cancer in early 2004, and she had to leave work in March 2004. Pacitto then took over the recordkeeping duties during Huryn's absence, and visited Huryn in an attempt to complete the inventory records. Huryn returned to work on August 2, 2004, and completed an inventory count at that point.

The Director then applied his interpretation of willfulness, and found that Pacitto was aware of the recordkeeping requirements because ATF had instructed her as to the requirements in its December 2000 meeting. He further stated that, regardless of what Felix Girone had informed her prior to 1999 about a relaxation of recordkeeping during the "busy season," Pacitto knew that was incorrect after December 2000. He also noted that, despite ATF's failure to cite previous recordkeeping violations occurring between 2000 and 2003, he could find that Vineland had been willful in its violations because Vineland had knowledge of the proper requirements. He then applied the relevant standard, finding that Vineland "willfully violated" the recordkeeping requirements because Pacitto chose to neglect the daily summary of magazine transactions thirty-six times between January and September 2004 despite having knowledge as to the requirements.

The Director's reasonable interpretation of "willfulness" is that a licensee has willfully violated the regulations "if, with knowledge of what the regulations require, the dealer repeatedly violates those regulations." A great deal of evidence supports the Director's conclusion that Pacitto had knowledge of the recordkeeping requirements under 42 U.S.C. § 842(f) and 27 C.F.R. § 555.127. Pacitto does not dispute that she was aware of the requirements, and as the Director pointed out, Pacitto spoke with ATF inspectors regarding the requirements of 27 C.F.R. § 555.127 at the December 2000 meeting.[21] Thus, there

[21]Although Vineland challenged the Director's determination that Pacitto had knowledge of the regulations

30

is evidence in the record that Pacitto had knowledge of the requirement.

Additionally, the evidence supports the conclusion that Pacitto repeatedly violated the regulation. Her failure to properly record the transactions was not a "one-off event" as Vineland claims, but instead occurred on thirty-six occasions. Moreover, Pacitto's failure to comply did not occur during a brief time period, but extended for months with the end result being, as the Director noted, "that thousands of pounds of explosives left Vineland's facility without any record being kept." While we agree with the Director that Huryn's illness was clearly unfortunate and requires much sympathy, her illness did not provide Pacitto carte blanche to stop complying with the regulation requiring her to keep a record of the daily summary of magazine transactions.

Based on the foregoing, substantial evidence supports the Director's conclusion that Pacitto had knowledge of the recordkeeping requirements, and yet did not comply with them

_____

based on her involvement in the operations of Fireworks by Girone, Pacitto acknowledged that she was aware of the recordkeeping requirements under 27 C.F.R. § 555.127 following her meeting with ATF inspectors in December 2000. Because we are only reaching a conclusion as to Violations 5 and 6 and Pacitto admitted that she had knowledge of the requirement involved in these violations, we find it unnecessary to further address this argument.

31

thirty-six times over a ten-month period.[22]   Therefore, substantial evidence supports the Director's ultimate conclusion that Vineland "willfully violated" 42 U.S.C. § 842(f) and 27 C.F.R. § 555.127.

At oral argument, Vineland conceded that, were we to find that substantial evidence supported even one of the Director's conclusions that Vineland had "willfully violated" federal law and ATF regulations, the Director's decision to revoke its license and deny its renewal would be proper. Therefore, because we conclude that there was substantial evidence to support the Director's conclusion as to Violations 5 and 6, we find it unnecessary to reach a conclusion as to the remaining violations.

III.

For the foregoing reasons, we will deny the petition for review of the Director's order.

---

[22]To the extent that Vineland argues that the Director should have considered its exemplary records prior to 2004, we find its argument unavailing because prior compliance is not the relevant standard.  In addition, to the extent that Vineland argues that the Director should have considered whether it was likely to violate 27 C.F.R. § 555.127 in the future, we find its argument unavailing because future compliance is not the relevant standard either.

*JORDAN, Circuit Judge, concurring in the judgment.*

_____

I agree with the majority that the ATF was not required to give deference to the ALJ's factual findings and legal conclusions. I also agree that substantial evidence supports the ATF's finding that Vineland willfully violated certain statutory and regulatory record-keeping requirements and that its petition for review should therefore be denied.[23] I take issue, however, with the majority's assertion that we owe *Chevron* deference to the ATF's interpretation of the term "willfully" as it appears in 18 U.S.C. § 843(b)(2).

Section 843(b) of Title 18 states that, upon the filing of an application for a license to manufacture or deal in explosives, the Attorney General shall issue the appropriate license if, among other things, "the applicant has not willfully violated any of the provisions of [18 U.S.C. §§ 841 through 848] or

_____

[23]Vineland agreed during oral argument that the ATF's order should be upheld if we concluded that any one of the charged violations was supported by substantial evidence.

33

regulations issued [t]hereunder."[24]  18 U.S.C. § 843(b)(2).  As explained by the majority, the ATF concluded that proof that Vineland acted with knowledge that its conduct was unlawful – that it distributed fireworks without maintaining the daily records that it knew were required by law – was sufficient to establish willfulness within the meaning of § 843(b)(2).  The majority then holds that the ATF's interpretation of the term "willfully" is entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).  However, I see no need to invoke *Chevron* on that point.  Since it appears that we would independently arrive at the ATF's position on willfulness, there is "no occasion to defer and no point in asking what kind of deference, or how much." *Edelman v. Lynchburg Coll.*, 535 U.S. 106, 114 (2002).

Moreover, *Chevron* instructs us to give deference to an agency's reasonable policy choice when Congress gave the agency the authority to make such a choice.  Here, the ATF did not even purport to be doing that.  There is nothing in the ATF's

---

[24]Among the provisions referred to by § 843(b)(2) is 18 U.S.C. § 842(f), which makes it a crime for a licensee "willfully to manufacture, import, purchase, distribute, or receive explosive materials without making such records as the Attorney General may by regulation require," and 27 C.F.R. § 555.127, which requires licensees to keep daily records of the total quantity of explosives received in and removed from each magazine and the total remaining on hand at the end of the day.

34

decision that suggests that its interpretation of "willfully" was the result of its independent determination that its construction was desirable to further some policy goal. Instead, the ATF relied entirely on decisions of the various Courts of Appeals interpreting that term in the firearms and explosives licensing contexts, and it concluded from those decisions that the ALJ had applied the "incorrect standard." (App. 14.) In other words, the agency accurately saw itself as applying a general legal standard, not making a decision within its peculiar administrative ken. *Cf. Colacicco v. Apotex Inc.*, 521 F.3d 253, 274 (3d Cir. 2008) (Noting that we are "ordinarily ... leery of an agency's view of what is essentially a legal issue"); *Blackburn v. Reich*, 79 F.3d 1375, 1377 n.3 (4th Cir. 1996) ("Because the Secretary based his decision in the instant case on judicial precedent rather than his own interpretation of the statute, we owe 'no more deference than we would any lower court's analysis of the law.'" (quoting *Thomas Hodgson & Sons, Inc. v. FERC*, 49 F.3d 822, 826 (1st Cir. 1995))). Indeed, nowhere in its briefing did the agency ask for *Chevron* deference, as one might have expected it would had it believed it necessary.

For these reasons, I do not believe the majority's *Chevron* analysis is required in this case, and I decline to join it.

35