In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 16-1015

DCV IMPORTS, LLC,

*Petitioner*,

*v.*

BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES,

*Respondent*.

———————

Petition for Review of an Order of the
Bureau of Alcohol, Tobacco, Firearms and Explosives.
No. 3-IL-107-23-3L-00682

———————

ARGUED AUGUST 9, 2016 — DECIDED OCTOBER 4, 2016

———————

Before BAUER, POSNER, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. DCV Imports, LLC, a family-operated fireworks importer in rural Illinois, petitions for review of an order denying renewal of its import license. An administrative law judge found that DCV Imports willfully failed to keep required records of its daily transactions, *see* 18 U.S.C. § 842(f); 27 C.F.R. § 555.127, and recommended that the company's license not be renewed. The regional

office of the Bureau of Alcohol, Tobacco, Firearms and Explosives accepted that recommendation, and the decision was upheld by the Deputy Director of ATF. We conclude that substantial evidence supports the Deputy Director's decision and deny the petition for review.

## I. Background

The activities of two closely related, family-owned fireworks businesses are relevant to this case, although only the denial of DCV Import's license is directly at issue. Mary Vinyard and Stephen Vinyard, Sr., began operating S&N Fireworks in the late 1970s, and in 1997 they obtained from the ATF a license to import high explosives. Their son Darren founded DCV Imports in 2004 with the intention of eventually buying out his parents' business or running his own fireworks company. DCV (meaning Darren Clifford Vinyard) shared S&N's place of business in Lincoln, Illinois, and in 2004 obtained its own license to import high explosives. From 2004 until 2011, S&N Fireworks ordered bulk fireworks from DCV Imports, which imported the explosives from China and immediately transferred them to S&N Fireworks. S&N then packaged and sold the fireworks for individual shows.

In addition to the two companies' shared premises and symbiotic business relationship, Darren was employed by S&N Fireworks and was listed as a "responsible person" on S&N's license. ATF regulations define "responsible person" as one "who has the power to direct the management and policies of the applicant pertaining to explosive materials" and generally "includes partners, sole proprietors, site managers, corporate officers and directors, and majority shareholders." 27 C.F.R. § 555.11. Darren's duties with S&N

included delivering fireworks for shows and staging fireworks shows.

ATF agents periodically conduct compliance inspections of federal explosives licensees. *See id.* § 555.24. Agency regulations require that licensees maintain for each storage area or "magazine" an accurate "daily summary of magazine transactions," including the quantity of explosives received and removed and the total on hand at day's end. *See id.* § 555.127. Licensees also have an affirmative duty to notify ATF about discrepancies that "might indicate a theft or loss of explosive materials." *Id.* ATF investigators inspecting DCV Imports in 2004, 2008, and 2010 did not uncover any regulatory violation. DCV was not storing any explosives during this period, however, because all fireworks it received were immediately transferred to S&N Fireworks. Following each inspection, an ATF investigator reviewed with Darren the applicable statutes and regulations, and each time he signed an Acknowledgement of Federal Explosives Regulations.

S&N's compliance record, on the other hand, was spotty. ATF investigators cited the company for numerous violations during a 2006 inspection, including not maintaining accurate daily summaries and storing fireworks unsafely. That inspection led to a "warning conference" in 2008 attended by Darren and other S&N Fireworks personnel. Then in 2009 an inspection revealed a multitude of violations, including hundreds of instances where actual counts of stored fireworks contradicted inventory records, multiple inaccurate daily summaries, and the disappearance of roughly 10,000 pounds of shells. Stephen "Vinny" Vinyard, Jr., Darren's brother, was the S&N employee tasked with

maintaining the daily summaries throughout the period when these infractions occurred. Darren attended a conference in early 2010 to wrap up the 2009 inspection, and after reviewing the violations with an ATF investigator, he signed a report acknowledging the citations. Later that same year the ATF's Chicago Field Division, through its Director of Industry Operations, notified S&N Fireworks that its license would not be renewed because of willful violations uncovered during the 2009 inspection. Rather than contest the decision, S&N voluntarily surrendered its license.

DCV Imports then bought out S&N's inventory, equipment, customer lists, and show contracts. As part of the transaction, Darren agreed to give Vinny a 50% stake in DCV and to make him vice president, although Darren retained operational control as president of the company. DCV Imports expanded its operations from importing fireworks to running a complete fireworks business, as S&N Fireworks had been. Darren made Vinny responsible for maintaining the required daily summaries (and consequently the magazine inventories) even though maintaining those same records for S&N Fireworks had been Vinny's job when the lapses leading to the company's demise had occurred. Vinny did not receive any formal recordkeeping training and struggled to complete the daily summaries; he told Darren that he was uncomfortable performing this task. In early 2013 Vinny hired a cousin to take over the recordkeeping duties. Vinny himself trained the cousin to maintain the daily summaries and then "stopped paying attention" to the records.

A team of ATF investigators arrived unannounced in September 2013 to inspect DCV Imports. The investigators

began by counting the explosives in DCV's magazines and comparing those numbers to a computerized inventory, but when it became clear that the quantities did not match, the team asked Darren for the daily summaries. The investigators found 73 instances in which those records did not match the amount of fireworks added or removed from a magazine. Those 73 inaccurate daily summaries totaled 1,897 missing "units" or roughly 870 net pounds of explosives for which DCV Imports could not account. As before, this inspection concluded with a conference during which ATF investigators reviewed regulatory requirements and DCV's violations with Darren and required him to sign an Acknowledgement of Federal Explosives Regulations.

Based on these violations, ATF's Director of Industry Operations in Chicago notified DCV Imports in May 2014 that the agency did not intend to renew DCV's explosives license. The notice charged DCV Imports with willfully failing to comply with the recordkeeping mandate of 27 C.F.R. § 555.127. The notice placed special emphasis on the volume of missing fireworks.

DCV invoked its right to a hearing before an administrative law judge. *See* 18 U.S.C. § 843(e)(2). In a written submission to the assigned judge, DCV Imports did not dispute the violations but argued instead that its violations should not be deemed willful given its perfect compliance record before 2013. The agency responded that S&N Fireworks and DCV Imports were "essentially the same business operation" and equated the violations of the former with the latter.

The administrative law judge conducted an evidentiary hearing in December 2014 and afterward issued a written order agreeing with the agency that DCV Imports had

committed the recordkeeping violations willfully. The judge reasoned that Darren's long history of working in the fireworks industry and extensive interactions with the ATF "demonstrate that he was sufficiently knowledgeable of the ATF's federal explosives regulations" yet chose to disregard those requirements. The judge acknowledged that DCV Imports and S&N Fireworks are different entities, and although she did not impute S&N's *violations* to DCV, the judge did hold Darren accountable for the *knowledge* he gained as a responsible person at S&N Fireworks. She also agreed with the agency that Darren's decision to defer recordkeeping responsibility to Vinny—knowing that he was "at the center of the faulty recordkeeping that led to S&N's 2010 denial"—strongly supported a finding of willfulness. The judge recommended that the agency confirm the decision not to renew DCV's license.

That recommendation was accepted. DCV Imports sought review by the Deputy Director of the ATF, who after briefing and oral argument upheld the denial of DCV's license renewal. *See* 27 C.F.R. § 555.79. DCV Imports petitioned for review by this court. *See id.* § 555.80.

## II. Discussion

We will uphold the agency's conclusion that DCV Imports acted willfully if it is supported by substantial evidence. *See* § 843(e)(2); 5 U.S.C. § 706(2)(E). Congress has directed the Attorney General (and by delegation the Director of the ATF) to deny or refuse to renew a license to import or deal in explosive materials if the applicant has willfully violated any pertinent statute or regulation. 18 U.S.C. § 843(a), (b)(2). "Willfully" as used in § 843 is not defined, and only one of our sister circuits has addressed its meaning.

In *Vineland Fireworks Co. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, the Third Circuit reasoned that explosives licensing is analogous to firearms licensing "because ATF administers both … and the statutory provisions governing the revocation of each type of license require that the licensee has 'willfully violated' a statutory provision or a regulation." 544 F.3d 509, 518 (3d Cir. 2008). The court concluded that decisions addressing firearms licensing under the Gun Control Act provide "a useful framework" for explosives licensing and observed that the six circuits that have interpreted the meaning of "willful" in proceedings to revoke the license of a firearms dealer agree that the term means plain indifference to, or purposeful disregard of, a known legal duty. *Id.*; *see Shawano Gun & Loan, LLC v. Hughes*, 650 F.3d 1070, 1077–78 (7th Cir. 2011); *RSM, Inc. v. Herbert*, 466 F.3d 316, 320–23 (4th Cir. 2006); *Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 415 F.3d 1274, 1277 (11th Cir. 2005); *Appalachian Res. Dev. Corp. v. McCabe*, 387 F.3d 461, 464 (6th Cir. 2004); *Perri v. Dep't of the Treasury*, 637 F.2d 1332, 1336 (9th Cir. 1981); *Lewin v. Blumenthal*, 590 F.2d 268, 269 (8th Cir. 1979).

We adopt the Third Circuit's approach and conclude that the interpretation of "willfulness" applicable to firearms licensing applies as well to revocation of explosives licenses. Accordingly, no showing of bad purpose or evil motive is required to establish willfulness, and no *de minimis* exception is available. *See Article II Gun Shop, Inc. v. Gonzales*, 441 F.3d 492, 497–98 (7th Cir. 2006) (interpreting a parallel provision of the Gun Control Act).

With this definition in mind, we turn to the question whether substantial evidence supports the administrative

law judge's finding that DCV Imports acted willfully. DCV Imports insists that the judge focused "so heavily" on establishing Darren's knowledge of the explosives regulations that she "failed to address the more important issue of whether DCV intentionally disregarded or was plainly indifferent to its legal duties."

DCV essentially takes the position that it lost 870 net pounds of explosives because of negligence or ignorance, not purposeful disregard of its regulatory duties. The company argues that the administrative law judge was wrong to fault Darren for giving Vinny responsibility for the daily summaries because Vinny was the "relatively more experienced brother." Darren's choice to defer to "the most experienced person available" evinces a "conscious effort to fulfill" the regulatory requirement, DCV argues. But that inference is unreasonable on this record; even if we accept that Vinny was the "more experienced brother," his recordkeeping history at S&N Fireworks was so poor that it led to the revocation of S&N's license. DCV Imports also contends that the agency was wrong to impute to Darren knowledge gained from his time at S&N Fireworks because he did not hold an ownership interest and was at most a site manager. But Darren's lack of an ownership interest in S&N Fireworks is irrelevant since DCV Imports cannot claim that he was unaware of the recordkeeping requirements.

DCV also argues that the agency was wrong to rely on the acknowledgments Darren signed because those forms merely indicate that ATF gave him a general overview of the regulatory requirements and do not establish that Darren actually understood them. Again, that's not a reasonable argument on this record. Substantial evidence supports the

agency's conclusion that Darren was sufficiently familiar with the regulatory requirements based on his long history in the fireworks business and numerous prior ATF inspections and warnings.

DCV tries to minimize its culpability by characterizing the many lapses uncovered in the 2013 inspection as a "single recordkeeping violation." Once again, that's not an accurate characterization of the facts; hundreds of pounds of explosives were lost on account of 73 inaccurate daily summaries. Anyway, one willful violation *is* enough; the ATF isn't required to cite a licensee repeatedly before revoking an explosives license. *Am. Arms Int'l v. Herbert*, 563 F.3d 78, 87 (4th Cir. 2009) ("Plain indifference can be found even where nine times out of ten a licensee acts in accordance with the regulations, if he was plainly indifferent to the one-in-ten violation."); *Vineland Fireworks Co.*, 544 F.3d at 518–19. Darren and Vinny were intimately involved with S&N Fireworks when their parents lost their license based largely on the same type of recordkeeping violations, yet neither of the brothers exercised the initiative to ensure that DCV complied. This more than supports a finding of willfulness.

Moreover, no principled basis exists on which to distinguish the facts of this case from *Vineland Fireworks Co.*, the only federal appellate decision directly addressing revocation of an explosives license. There the Third Circuit upheld a finding that a licensee willfully failed to maintain accurate daily transaction records where the company's owner had been the responsible person of a predecessor company when its license was revoked for similar recordkeeping violations. 544 F.3d at 521–22. The Third Circuit specifically rejected an argument that the company's principal should be excused

from compliance because her bookkeeper was undergoing cancer treatment when the violations occurred, finding that the owner's interactions with ATF during the predecessor company's revocation demonstrated her knowledge of the regulatory requirements. DCV's argument—that Darren's lack of experience and Vinny's apparent incompetence negates a finding of willfulness—is similarly unpersuasive.

Finally, DCV asserts that because it previously asked the ATF for guidance in interpreting a different set of explosives regulations, the finding of willfulness was improper. As far as we can tell, this contention concerns a separate, unrelated charge that the administrative law judge rejected and thus no longer is at issue. A licensee's effort to understand one regulation does not inoculate it against a finding that it intentionally disregarded another. DCV also suggests, without citation to evidentiary support, that the ATF investigators provided contradictory interpretations of the agency's regulations. The administrative law judge pointed out that no evidence in the record supports this contention.

In short, substantial evidence supports the agency's conclusion that DCV Imports willfully violated explosives regulations. The petition for review is, accordingly, DENIED.