In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-2800

ARTICLE II GUN SHOP, INC., d/b/a GUN WORLD

*Plaintiff-Appellant,*

*v.*

ALBERTO GONZALES,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 4598—**Matthew F. Kennelly**, *Judge.*

ARGUED JANUARY 11, 2006—DECIDED MARCH 20, 2006

Before FLAUM, *Chief Judge*, and EASTERBROOK and
MANION, *Circuit Judges*.

FLAUM, *Chief Judge*. Article II Gun Shop, Inc., doing
business as Gun World ("Gun World") had its federal license
to sell firearms revoked by the Bureau of Alcohol, Tobacco,
and Firearms ("ATF"), based on allegations that Gun World
willfully violated several reporting requirements of the Gun
Control Act of 1968, 18 U.S.C. § 921 *et seq.* ("Act"). Gun
World challenged ATF's revocation decision in federal
district court, pursuant to 18 U.S.C. § 923(f)(3). The
government filed a motion for summary judgment, which
the district court granted. Gun World appeals. For the
following reasons, we affirm the opinion of the district
court.

## I.  Background

Gun World has been a federally licensed firearms dealer since 1978. Barry Soskin ("Soskin") is Gun World's corporate president, secretary, treasurer, and sole director and stockholder. He has held these positions since the store opened in 1978.

ATF inspected Gun World in 1981, 1998, and 2000 for compliance with the Gun Control Act and its implementing regulations. After each inspection, ATF cited Gun World with violations of the Act, including violations of the Act's recordkeeping requirements. The Act requires a firearms dealer to fill out a "Form 4473" ("Form") whenever a firearm is sold. *See* 27 C.F.R. § 478.124(c)(2). The Form is used to record identifying information about gun purchasers and the firearms they purchase, which allows firearms to be traced and prevents transfer to persons prohibited from possessing firearms. *See id.* The 1981 inspection report showed that Gun World failed to properly complete 30 Forms. The 1998 inspection report showed that Gun World failed to properly complete 34 Forms and failed to properly maintain an acquisition and disposition book. *See* 27 C.F.R. § 425(e). The inspector who conducted the 1998 inspection discussed the violations with Soskin and the corrective actions Gun World would need to take.

The 2000 inspection report documented more violations: two separate straw sales; at least fifteen occasions on which Gun World knowingly and willfully failed to obtain and record information required on the Forms; at least forty-nine occasions on which Gun World knowingly and willfully transferred firearms to legal aliens without obtaining required documentation; and at least fourteen occasions on which Gun World knowingly and willfully failed to record sales or dispositions of firearms in the acquisition and disposition book within seven days of a transfer.

On May 18, 2000, ATF's Chicago Area Supervisor, Nicholas Scouffas, warned Gun World that ATF was contemplating revoking Gun World's licence. On May 31, 2000, Gun World was given an opportunity to conference with ATF and present evidence in support of its position that its license should not be revoked. At the conference, Gun World promised to take corrective actions to prevent further violations. According to the government, however, Gun World continued to violate the Act after the May 31 conference.

On July 22, 2002, ATF issued Gun World a notice that its license was being revoked. The revocation was based on the 2000 inspection report and the store's history of violations. Gun World requested a hearing to review the revocation, pursuant to 18 U.S.C. § 923(f)(2). The hearing took place on January 29 and 30, 2003. The hearing officer sent ATF a report summarizing the evidence introduced at the hearing and his findings of fact, conclusions and recommendations. Richard Alexander ("Alexander"), ATF's Chicago Field Division Director of Industry Operations, concluded from the hearing officer's report that Gun World had willfully violated the Gun Control Act. On May 5, 2003, ATF issued a final notice of revocation to Gun World.

Gun World filed a petition with the district court, seeking de novo review of ATF's decision. *See* 18 U.S.C. § 923(f)(3). ATF filed a motion for partial summary judgment. ATF sought summary judgment based on ATF's finding that Gun World knowingly and willfully failed to complete fifteen Forms, in violation of 18 U.S.C. § 922(m). The district court "disregard[ed] the other violations for which Gun World was cited during the 2000 inspection and . . . decide[d] whether the Form 4473 violations alone authorized ATF to revoke Gun World's license." Gun World did not deny that the fifteen violations occurred, but only that they were "willful."

Alexander, the ATF director who approved the revocation of Gun World's license, signed a declaration on February 24,

2005, stating that he would have revoked Gun World's license based solely on the Form 4473 violations. Alexander's declaration was based on the record of the proceedings before the ATF, the hearing officer's report, the evidence considered by the hearing officer, and the initial and final notices of revocation.

The district court granted ATF's motion for summary judgment, and Gun World appeals.

## II. Discussion

Gun World raises three issues on appeal. First, Gun World argues that the district court erred by admitting into evidence ATF's 1981 and 1998 inspection reports, because the reports were not certified or sworn copies, as required by Federal Rule of Civil Procedure 56(e). Second, Gun World maintains that the district court should not have considered the 1981 ATF inspection report, because there is a five-year statute of limitations for any forfeiture proceeding. Third, Gun World argues that its violations of the Gun Control Act were not "willful," because Gun World did not act with the intent to disobey or disregard the law. We are not persuaded by these arguments.

### A.  *The 1981 and 1998 ATF Inspection Reports.*

The district court based its decision in part on copies of 1981 and 1998 ATF inspection reports. The reports were attached as exhibits to the affidavit of Thomas Karmgard ("Karmgard"), an ATF attorney. Gun World argues that the district court should not have looked to these reports to evaluate the willfulness of the violations committed in 2000, because the reports were not "sworn or certified copies," as required by Federal Rule of Civil Procedure 56(e). Federal Rule of Civil Procedure 56(e) requires that, in cases involving summary judgment, "[s]worn or certified copies of all

papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." According to Gun World, "because the [1981 and 1998 inspection] reports themselves are not sworn or certified copies, they are not available to support a motion for summary judgment," regardless of whether they were sufficiently authenticated pursuant to Federal Rule of Evidence 901(b)(1).

In response, the government maintains that the reports need not be sworn or certified copies, because ATF did not revoke Gun World's license based on these reports; instead, it based the revocation on the 2000 report, as Alexander stated in his declaration. Additionally, the government maintains that even if the reports should not have been admitted, the error was harmless because Soskin admitted under oath that Gun World had been cited by ATF in 1981 and 1998 for violations of the Act.

The district court found that the reports were admissible, and that Karmgard's personal knowledge of the matters underlying the reports was unnecessary to lay a foundation for their admissibility. Instead, Karmgard's affidavit authenticates the reports as records of ATF. *See* FED. R. EVID. 901(b)(1). The district court also pointed out that Gun World does not dispute that the reports attached to the affidavit are accurate copies of the originals.

The district court properly considered the reports. The government submitted Karmgard's sworn affidavit in support of its motion for summary judgment. The affidavit authenticated the reports by establishing that they are public reports, kept in a public office, where reports of that type are kept. *See* FED. R. EVID. 901(b)(1)(7) ("Public records or reports. Evidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement, or data compilation, in any form, is from the public office where items of this nature are kept.").

Karmgard, as an agent of ATF, was competent to make such a statement. He swore to the authenticity of the documents attached to his affidavit, including the 1981 and 1998 reports. It was not necessary that he swear to personal knowledge of facts contained in the reports. Public records and reports are admissible as an exception to the hearsay rule, once their authenticity is established. *See* FED. R. EVID. 803(8).

Gun World emphasizes that there is a distinction between a document's authenticity and its admissibility, and argues that while the reports were properly authenticated, they still are not admissible. Gun World is correct that a document is not admissible simply because it has been authenticated. "To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Scott v. Edinburg*, 346 F.3d 752, 760 n.7 (7th Cir. 2003) (quoting 10A Charles Alan Wright et al., *Federal Practice & Procedure* § 2722, at 379-80 & 382-84 (1998)). Those requirements have been met in this case: the reports were authenticated by Karmgard's affidavit; the reports were attached to his affidavit, which met the requirements of Rule 56(e); and Karmgard is a person through whom the reports could be admitted into evidence, because he is an agent of ATF and is knowledgeable about ATF's recordkeeping system. Thus, the district court did not err by considering the reports.

### B.  Statute of Limitations

Gun World also argues that consideration of the 1981 ATF report is barred by the 5-year statute of limitations contained in 28 U.S.C. § 2462, which provides that "a proceeding for the enforcement of any . . . forfeiture,

pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued." Gun World claims that § 2462 applies to administrative proceedings as well as judicial proceedings. Additionally, Gun World maintains that the revocation of its license amounted to a "proceeding for the enforcement" of a forfeiture. Gun World concludes that "[a]s Gun World cannot be punished for acts/omissions in 1981, the grant of summary judgment was improper to the extent it was based upon the 1981 acts/omissions."

The government responds that although "ATF could not revoke Gun World's license because of" the 1981 report, "ATF and the district court were free to consider the 1981 report of violations as evidence that Gun World knew of its obligations to correctly complete Forms 4473 for the guns it sold." According to the government, "[s]tatutes of limitation put time limits on when actions may be brought; they are not evidentiary rules that blind courts from consideration of relevant facts."

We, like the district court below, agree with the government. The revocation of Gun World's license was based on its violations of the Act in 2000. The "claim first accrued" in 2000, when ATF made its 2000 report. The action was commenced within five years of this time. The fact that Gun World was also cited in 1981 and 1998 is simply evidence that Gun World had knowledge of the Act's requirements; Gun World admits as much. There is a distinction between acts that are prosecuted and acts that would be barred by the statute of limitations but are admissible to show that an act being prosecuted actually occurred. *Cf. United States v. Barnes*, 230 F.3d 311, 315 (7th Cir. 2000) ("Relevant pre-limitations evidence is admissible to show the existence of a scheme to complete an illicit transaction."); *United States v. Wellman*, 830 F.2d 1453, 1464 (7th Cir. 1987) (fact that mail fraud scheme and acts committed in furtherance of it may have extended over

a period of time that was in part barred by the statute of limitations did not preclude evidence of those acts from being admitted to show that mailings occurring within the statutory period were in furtherance of a scheme to defraud).

## C.  *Willfulness*

Gun World's final argument is that the district court erred by determining that Gun World's violations of the Gun Control Act were willful. The parties disagree as to the meaning of "willfully" as used in 18 U.S.C. § 923(e). Gun World argues that willfulness requires a "bad purpose to disobey or to disregard the law." According to Gun World, ATF must show that Gun World's acts were more than "inadvertent error or technical mistakes." Gun World maintains that its *de minimis* number of violations in light of its sales volume (in 2000, 12 of 880 Forms contained errors) demonstrates that it did not act willfully. Finally, Gun World maintains that the errors on its Forms were not "material" because, in some cases, omitted information could be found on other documents, or, in other cases, Gun World employees knew the gun buyers and how they would respond to skipped questions.

According to the government, Gun World acted willfully if it "purposefully disregarded or was plainly indifferent to" the law. The government emphasizes that nothing in the Gun Control Act, its implementing regulations, or the case law interpreting the Act creates an exception to revocation for *de minimis* violations of the Act. Additionally, the government notes that Soskin and other Gun World employees admitted that they knew that Forms 4473 needed to be filled out completely and that ATF considered these documents critical to enforcement of the Act.

Contrary to Gun World's position, ATF is not required to show that a gun vendor acted with a "bad purpose or evil

motive before a license may be revoked or a renewal application denied." *Stein's, Inc. v. Blumenthal*, 649 F.2d 463, 467 (7th Cir. 1980). Instead, ATF must "prove that the petitioner knew of his legal obligation and purposefully disregarded or was plainly indifferent to the recordkeeping requirements." *Id.* (internal citation omitted).

According to Gun World, the Supreme Court implicitly overruled *Stein's* in *Bryan v. United States*, 524 U.S. 184 (1998). Gun World argues that *Bryan* eliminated the "plain indifference standard" and held that willfulness requires a "bad purpose to disobey or to disregard the law." Gun World is incorrect. In *Bryan*, the defendant had been convicted of conspiring to sell firearms without a license and engaging in the sale of firearms without a license, in violation of provisions of the Gun Control Act that contained a willfulness requirement. *See* 18 U.S.C. §§ 922(a)(1) and 924. The defendant claimed that he had no knowledge of the Act's requirements, so that his violations could not be willful. The Court held that the defendant's bad purpose was sufficient to satisfy the willfulness requirement under the facts of that case, where the defendant had used straw purchases, filed off guns' serial numbers, and sold guns on the black market. *Bryan*, 524 U.S. at 189, 194-96.

The *Bryan* Court recognized that this Court in *Stein's* "stated that willfulness in § 923(d)(1) is satisfied by a disregard of a known legal obligation." *Id.* at 196-97. The Court found that while cases like *Stein's* "support the notion that disregard of a known legal obligation is sufficient to establish a willful violation, they in no way stand for the proposition that it is required." *Id.* at 197-98. The *Bryan* Court did not hold that a showing of "bad purpose" is required before ATF can revoke the license of a gun dealer who violates the Act despite knowledge of its requirements. *Id.* Rather, the Court simply held that a bad purpose may be sufficient to demonstrate purposeful disregard for or

plain indifference to the law, where there is no evidence a party was aware of the requirements of the law. In this case, it is clear that Gun World was aware of its obligations under the Act.

Additionally, we reject Gun World's argument that its mistakes were inadvertent and *de minimis*. The record shows that Soskin was aware that the Act does not allow any *de minimis* number of violations, and he was obviously aware of the Act's requirements after being cited for numerous violations in the past. *See Stein's*, 649 F.2d at 468 ("Evidence of repeated violations with knowledge of the law's requirements has been held sufficient to establish willfulness." (citing *Lewin v. Blumenthal*, 590 F.2d 268 (8th Cir. 1979)). Even after Gun World was warned in 2000 that its license could be revoked based on its violations, Gun World continued violating the Act. *Cf. Breit & Johnson Sporting Goods, Inc. v. Ashcroft*, 320 F. Supp. 2d 671, 678-80 (N.D. Ill. 2004) (firearms dealer's repeated violations of the Gun Control Act's recordkeeping requirements, even after two ATF warning conferences, sufficient to establish "willfulness"). Gun World tries to explain why each of its violations was immaterial—either because the information sought on a Form could be found on another form or because it could be discovered by talking to Gun World employees. These explanations are irrelevant. The revocation provision applies regardless of whether a firearms dealer's failure to comply with the Act actually results in illegal possession or usage of a firearm or an inability to track a firearm that has been sold.

### III.  Conclusion

For the foregoing reasons, we AFFIRM the opinion of the district court.

MANION, *Circuit Judge*, dissenting. Because I con-
clude that the government is not entitled to summary
judgment, I respectfully dissent. The central question here
is whether Gun World's recordkeeping violations were
willful under 18 U.S.C. § 923(e). I agree with the court that
this question is governed by *Stein's, Inc., v. Blumenthal*, 649
F.2d 463, 467 (7th Cir. 1980). Thus, to show willfulness and
succeed in revoking Gun World's dealer license, the govern-
ment must "prove that [Gun World] knew of [its] legal
obligation and purposefully disregarded or was plainly
indifferent to the recordkeeping requirements." *Id.* (internal
quotation omitted). Gun World has taken the first half of
the willfulness test, i.e., knowledge, off the table; it con-
ceded that it knew of its duty to fully complete the govern-
ment's firearm transaction forms. It is also important to
note that the government and this court regard the 1981
and 1998 reports simply as evidence of Gun World's knowl-
edge of the Act's requirements. This dispute therefore turns
on whether Gun World acted with purposeful disregard or
plain indifference when it left a small number of boxes
blank on 12 of the 880 forms it filled out between January
1999 and February 2000.

The government's evidence on this crucial point, viewed
in a light most favorable to Gun World, as it must be in this
situation, fails to show that the government is entitled to
summary judgment. *See United States v. Rode Corp.*, 996
F.2d 174, 178 (7th Cir. 1993); Fed. R. Civ. P. 56(c). The
evidence supporting the government's summary judgment
motion is confined to a few spaces left blank on 12 forms.
During the period in question, Gun World was responsible
for some 51,240 pieces of information on the 880 forms, and
it omitted 19 of those pieces. On its face, that appears to be
a very positive compliance ratio: 51,221 out of 51,240
(99.96%). Gun World's substantial compliance on the 12
forms in question and total compliance on the rest is a
strong indicator that Gun World was not disregarding or

being indifferent to its obligations. If, with the 12 forms, the government had submitted an affidavit from an informant, for example, attesting to the fact that Gun World left a box blank at the informant's request, then the summary judgment would be appropriate. Here, however, there are only the forms themselves, and, in a light most favorable to Gun World, these 12 substantially-completed forms upon which the government seeks to revoke Gun World's license, do not prove, for summary judgment purposes, that Gun World purposefully disregarded or was plainly indifferent to the recordkeeping requirements. One willful violation could put them out of business, but several inadvertent ones should not.

To bolster its case, the government cites its 1981 and 1998 inspection reports, contending that the past violations recounted therein and the corresponding warnings establish Gun World's knowledge of its recordkeeping obligations. However, Gun World does not dispute the knowledge prong of the willfulness test, and the admission of those reports was only to evidence knowledge. In any event, these past violations as well as later Gun World lapses (i.e., after February 2000) raised by the government do not conclusively show that the 12 violations for which the government seeks to revoke Gun World's license were triggered by purposeful disregard or plain indifference. A rational trier of fact could find, that despite other shortcomings, the 12 violations were caused by *something less than purposeful disregard or plain indifference*, such as a genuine mistake that, despite all diligence, slipped through undetected. *Cf. Groh v. Ramirez*, 540 U.S. 551, 556 (2004) (Kennedy, J., dissenting) ("Every lawyer and every judge can recite examples of documents that they wrote, checked, and doublechecked, but that still contained glaring errors.").

The entire willfulness inquiry of § 923(e) illustrates that this is not a strict liability situation, and, thus, cases built upon nothing more than repeated omissions should not

automatically result in revocation at the summary judgment stage. Here, the evidence and all reasonable inferences therefrom, viewed in a light most favorable to Gun World, do not prove that Gun World purposefully disregarded or was plainly indifferent to the recordkeeping requirements. It is a factual question to be resolve at a trial/evidentiary hearing in accordance with 18 U.S.C. § 923(f)(3). *See Stein's*, 649 F.2d at 466 (explaining when a "trial de novo" is appropriate). I would thus reverse the grant of summary judgment.

I should note that apparently this case began with much more than has been funneled into this appeal. As the court mentions, the 2000 inspection report detailed a number of violations, including two straw sales, not at issue here. These are significant accusations which may explain why the ATF engaged in such an extensive investigation. But all of these charges were effectively dropped, leaving a case involving 19 blank spaces on 880 forms. The ATF director by declaration assured the court that he would have revoked Gun World's license solely on these 19 Form 4473 violations. There may be good reasons to revoke the license that Gun World has held for over 25 years, but because the Form 4473 violations are the only basis for revocation, the government must present actual evidence of willfulness, or else the trier of fact should decide.

A true Copy:

     Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*