In the

# United States Court of Appeals
### For the Seventh Circuit

No. 10-2927

SHAWANO GUN & LOAN, LLC, d/b/a
SHAWANO GUN & LOAN,

*Plaintiff-Appellant,*

*v.*

MARY JO HUGHES, Director of Industry Operations,
Bureau of Alcohol, Tobacco, Firearms and Explosives,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 2:09-cv-00150-WCG—**William C. Griesbach**, *Judge.*

ARGUED JANUARY 18, 2011—DECIDED JUNE 7, 2011

Before TINDER and HAMILTON, *Circuit Judges*, and
MURPHY, *District Judge.*\*

---

\* The Honorable G. Patrick Murphy of the Southern District
of Illinois, sitting by designation.

MURPHY, *District Judge.* Shawano Gun & Loan, LLC (Shawano) sells fishing equipment and firearms from its sporting goods store and pawnshop in northern Wisconsin. The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) revoked Shawano's federal license to sell firearms in December 2008 after it rejected Shawano's administrative appeal from a hearing officer's finding that Shawano willfully violated record keeping requirements of the Gun Control Act and pertinent regulations. Shawano filed suit in the district court against Mary Jo Hughes, ATF Director of Industry Operations, under 18 U.S.C. § 923(f)(3) for de novo judicial review of the administrative decision and requested an evidentiary hearing. The district court thought there was ample uncontroverted evidence that Shawano had willfully failed to comply with the record keeping requirements and granted summary judgment against Shawano without conducting an evidentiary hearing. The district court stayed enforcement of the revocation pending appeal. The question for the district court and the issue here is whether Shawano's violations are willful for purposes of the Gun Control Act. For the reasons that follow, the district court's judgment is affirmed.

## I. Factual and Procedural Background

In 1998, Timothy Backes obtained a federal firearms license for his sole proprietorship, now known as Shawano and reorganized as a limited liability company (LLC). The Gun Control Act requires firearms dealers to keep certain records. The general record keeping provisions of the

Gun Control Act of 1968 (GCA), 18 U.S.C. § 921 *et seq.*, are found at 18 U.S.C. § 923(g) and its implementing regulations, 27 C.F.R. Part 478 (formerly Part 178). Firearms dealers are required to ensure that a Firearm's Transaction Record, ATF Form 4473, is completed properly to record identifying information about firearm purchasers, to prohibit transfers to persons prohibited from possessing firearms, and to facilitate the tracing of firearms involved in crimes. A prospective firearm purchaser completes Sections A and C of ATF Form 4473 to disclose certain identifying information and to answer questions from which the dealer can determine whether the firearm legally can be transferred to the prospective purchaser. The firearms dealer completes Sections B and D to provide information about the firearm being transferred, the identification documents produced by the purchaser, and the results of the requisite Brady Law National Instant Criminal Background Check System (NICS check). Section D further requires the dealer to certify that the dealer believes, based upon the information disclosed in ATF Form 4473, that it is not unlawful for the dealer to transfer the firearm to the prospective purchaser. Such unlawful transfers are outlined in 18 U.S.C. § 922 and include, among others, transactions where a dealer knows or has reasonable cause to believe that the purchaser is a convicted felon, is a fugitive, uses or is addicted to any controlled substance, has an adjudicated mental defect, is an illegal alien, or has been convicted of misdemeanor domestic violence. 18 U.S.C. § 922(d). A dealer violates the GCA if the dealer transfers a firearm based upon information in ATF Form

4473 that he knows or has reason to believe is false. *See* 18 U.S.C. §§ 922(m) and 924(a)(1)(A); *see also* 27 C.F.R. § 478.124(c).

A federal firearms dealer also must maintain separate records in bound form for the acquisition and disposition of firearms. This acquisition and disposition book identifies each firearm that a dealer takes into its inventory and that leaves the dealer's inventory and the person from whom it was acquired or to whom it was transferred. A dealer's acquisition and disposition records must be readily available for inspection. *See* 27 C.F.R. § 478.125(e). In January 2002, ATF granted Shawano a variance, allowing it to use a specialized computer software program called Pawnmaster to input and maintain acquisitions and dispositions of firearms, provided that Shawano printed the records at least semi-annually or when requested by an ATF officer, when the system memory was purged, and upon discontinuation of the business.

In December 1999, ATF Special Operations Inspector John Moore conducted the first compliance inspection of Shawano and noted nine violations: (1) failure to ensure accurate completion of ATF Forms 4473; (2) failure to properly maintain completed ATF Forms 4473; (3) inconsistent dispositions of two firearms; (4) failure to properly maintain the acquisition and disposition book from August to December 1999, in that Shawano kept computerized records without first obtaining a computer variance; (5) failure to timely record disposition entries in at least 145 instances; (6) failure to timely

record acquisition entries in at least three instances; (7) making a disposition entry when firearm was not transferred; (8) failure to record acquisition and disposition information of a Browning pistol; and (9) failure to properly record firearm model and serial numbers into the acquisition and disposition book in at least twenty-three instances. Mr. Backes signed the ATF Report of Violations, which set forth the nine violations and the corrective action to be taken.

In June 2004, ATF Inspector Casimir Mleczko conducted a second compliance inspection, which uncovered six violations: (1) improper transfer of eleven firearms at a tavern as part of a raffle; (2) failure to provide written notification to non-licensees and to display a sign required by the Youth Handgun Safety Act; (3) seven instances of improper transfer of firearms to persons who indicated on ATF Forms 4473 that they were prohibited; (4) failure to ensure proper execution and completion of ATF Form 4473; (5) failure to maintain an accurate record of receipt and disposition; and (6) failure to make a semi-annual hard copy printout of the computerized acquisition and disposition record as required by the ATF computer variance. Inspection findings were reviewed in July 2004, and the federal firearms regulations were reviewed. Inspector Mleczko cautioned Mr. Backes, Shawano manager Scott Backes, and another employee about straw purchasers, incomplete ATF Forms 4473, and prohibited purchasers. Mr. Backes signed a second ATF Report of Violations, which noted the violations and the corrective action to be taken.

After this second compliance inspection revealed that Mr. Backes was operating his business as an LLC rather than a sole proprietorship, Mr. Backes submitted a new license application disclosing his business entity status as an LLC. In September 2005, Shawano Gun & Loan, LLC, was licensed as a dealer, including pawnbroker, in firearms other than destructive devices. Mr. Backes remains its owner.

In March 2005, ATF Director of Industry Operations John Jarowski sent Mr. Backes a letter to schedule a meeting to discuss the violations found during the second compliance inspection. The letter included a warning that any willful violation of federal firearms laws and regulations might result in revocation of the federal firearms license and that any violations, either repeat or otherwise, could be viewed as willful. Mr. Backes responded to the letter with intended corrective action, and a warning conference was held in April 2005 to discuss the violations and necessary corrective action. A follow-up letter from Director Jarowski summarized the corrective action proposed by Mr. Backes, including having a second person check each ATF Form 4473 before every transfer and having manager Scott Backes oversee and maintain the acquisition and disposition records, and again warned Mr. Backes of the possible consequence of future violations.

In March 2007, Industry Operations Inspector Mary Jo Holpit conducted a third compliance inspection. This inspection revealed seven violations, including repeat violations found during the earlier inspections: (1) unap-

proved use of the Pawnmaster computer program since moving the location of the business and changing its license from a sole proprietorship to an LLC; (2) inaccurate reflection of inventory in the acquisition and disposition records and failure to print the acquisition and disposition records for over nine months; (3) failure to provide the required Youth Handgun Safety Notice to purchasers; (4) Shawano's new location was less than 1000 feet from a school and within a school zone; (5) failure to obtain valid identification in at least four instances; (6) failure to properly execute and review ATF Forms 4473; and (7) knowingly assisting straw purchases by altering and reprinting pawn tickets. Mr. Backes signed a third ATF Report of Violations, which set forth the violations and the corrective action to be taken.[1] In response to the violation report, Mr. Backes submitted a letter addressing each violation and also submitted a variance request to use the Pawnmaster computer program.

On November 5, 2007, Shawano was served with a Notice of Revocation issued on October 20, 2007, by Mary Jo Hughes, ATF Director of Industry Operations, stating that its federal firearms license was being revoked. The Notice of Revocation lays out five counts of willful violations of the GCA and applicable regulations. Count 1 charges that in 2006 and 2007, Shawano failed to

---

[1] According to the Report, Shawano acquired 3896 firearms and disposed of 2942 firearms from January 1, 2006, through March 15, 2007.

properly record the disposition of at least fifty-four fire-arms in the acquisition and disposition book. This is a repeat violation from the 1999 and 2004 compliance inspections and the 2005 warning conference. Count 2 charges Shawano with failure to obtain complete and correct responses to questions on ATF Forms 4473 on thirteen occasions in 2006 and 2007. This also is a repeat violation from the 1999 and 2004 compliance inspections and the 2005 warning conference. Count 3 charges Shawano with willfully making false record entries and aiding and abetting the making of false record entries by another on five occasions by allowing firearm transfers through straw purchases. Count 4 charges Shawano with selling or otherwise transferring firearms to prohibited persons. This is a repeat viola-tion from the 2004 compliance inspection and the 2005 warning conference. Count 5 charges Shawano with willfully selling or otherwise disposing of firearms where the transferee indicated that he/she was not the actual purchaser. Shawano timely filed a request for an administrative hearing to review the revocation decision under 18 U.S.C. § 923(f)(2) and 27 C.F.R. § 478.73 and was granted a stay of revocation pending ATF's adminis-trative review hearing and decision.

On August 7, 2008, ATF Hearing Officer Michael R. Price conducted an evidentiary hearing at ATF's field office in Milwaukee. Hearing Officer Price issued a Report and Recommendation on August 15, 2008, concluding that ATF established (1) a willful failure to properly record the disposition of at least fifty-four firearms into the acquisi-tion and disposition record; (2) a willful failure to obtain

complete and correct ATF Forms 4473 on thirteen occasions; (3) willful making of false record entries and aiding and abetting the making of false record entries on five occasions by allowing straw transfers; (4) willful transfer of firearms to three individuals who indicated on ATF Forms 4473 that they were prohibited from possessing firearms; and (5) willful transfer of firearms on three occasions to persons who indicated on ATF Forms 4473 that they were not the actual buyer of the firearms. The willfulness finding was based on Mr. Backes's awareness of his legal obligations and indifference to becoming personally involved to ensure corrective action. Hearing Officer Price recommended that the license be revoked. ATF rejected the administrative appeal and served Final Notice of Revocation on Shawano in December 2008.

In February 2009, Shawano filed suit in the district court under 18 U.S.C. § 923(f)(3) for judicial review of the administrative decision to revoke its federal firearms license and requested an evidentiary hearing as part of the de novo judicial review. In its decision granting summary judgment without an evidentiary hearing, the district court accepted affidavits from Mr. Backes, Shawano's counsel, and the individuals who bought the firearms that are charged in Count 3 as straw purchases. The district court described the five counts set forth in the Notice of Revocation and found that Shawano's violations were willful because the repetitive nature of the violations showed purposeful disregard or plain indifference to federal rules and regulations. Enforcement of the revocation decision is stayed pending this appeal.

## II. Discussion

The Attorney General of the United States may, after notice and opportunity for hearing, revoke a dealer's federal firearms license if the dealer has willfully violated any provision of the GCA or any rule or regulation prescribed by the Attorney General thereunder. 18 U.S.C. § 923(e).[2] The dealer may file suit in the district court for "de novo judicial review" of the revocation decision. *Id*. at § 923(f)(3). In a proceeding brought under § 923(f)(3), the district court may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the administrative hearing. The district court is afforded discretion to receive evidence additional to that contained in the administrative record "when some good reason to do so either appears in the administrative record or is presented

---

[2] By final rule of the Department of the Treasury and the Department of Justice effective January 24, 2003, the governing regulations were reorganized to reflect the division created by the Homeland Security Act of 2002 of the Bureau of Alcohol, Tobacco and Firearms, Department of Treasury, into two separate agencies: the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) in the Department of Justice and the Alcohol and Tobacco Tax and Trade Bureau (TTB) in the Department of the Treasury. Reorganization of Title 27, Code of Federal Regulations, 68 Fed. Reg. 3744-01, 2003 WL 158517 (Jan. 24, 2003). ATF is tasked with inspecting and examining the records of licensed firearms dealers to ensure compliance with the Gun Control Act's implementing regulations. 27 C.F.R. § 478.23.

by the party petitioning for judicial review." *Stein's Inc. v. Blumenthal*, 649 F.2d 463, 466 (7th Cir. 1980) (affirming the district court's summary disposition of the case based on the administrative record without taking additional evidence). Where the district court exercises its discretion to admit additional evidence and no substantial credibility questions are presented, it may receive the evidence in the form of affidavits rather than testimony. *Id.* at 466 n.5.

> [T]he district court, consistent with its obligation to review the matter de novo, may accord the Secretary's findings such weight as it believes they deserve in light of the evidence in the administrative record and the evidence, if any, the district court receives to supplement that record. In this sense, the Secretary's decision may be upheld when the trial court concludes in its own judgment that the evidence supporting the decision is "substantial."

> Once the district court has reviewed the decision of the Secretary, the role of the appellate court is limited. It may review as in any other action the judgment of the district court to insure that it correctly applied the law including the appropriate scope of review. The district court's findings as to the facts, however, may not be upset unless clearly erroneous.

*Id.* at 467.

In this case, Shawano does not dispute the violations charged in Counts 2, 4, and 5. With respect to Count 1, the district court accepted Shawano's explanation that the fifty-four transactions did not appear on the acquisition

and disposition record because of a computer software error. Nonetheless, the district court found, and it is undisputed, that Shawano failed to print the acquisition and disposition record every six months as required. With respect to Count 3 relating to straw purchases, the district court accepted at face value the affidavits submitted by the purchasers and presumed that they bought the firearms for themselves. Nonetheless, the district court concluded that Shawano had reason to believe that the purchaser was purchasing the firearm for another person because the purchaser had the same last name and/or address as a person whose application to purchase the firearm was denied either that day or the previous day. There is no credibility question to warrant an evidentiary hearing, and the district court did not abuse its discretion in declining to conduct one. *See Stein's*, 649 F.2d at 466 n.5, 467. The question before the district court was, "as in most actions brought pursuant to 18 U.S.C. § 923(f)," whether Shawano's violations were willful. *Id*. at 467.

A violation is willful under 18 U.S.C. § 923(e) if ATF shows that the firearms dealer "'knew of [its] legal obligation and purposefully disregarded or was plainly indifferent to the recordkeeping requirements.'" *Article II Gun Shop, Inc. v. Gonzales*, 441 F.3d 492, 497 (7th Cir. 2006), *quoting Stein's*, 649 F.2d at 467. To act willfully, a firearms dealer is not required to act "with a 'bad purpose or evil motive.'" *Article II*, 441 F.3d at 497, *quoting Stein's*, 649 F.2d at 467. This is the standard applied by the district court; nonetheless, Shawano disputes the district court's interpretation of willful.

Shawano argues that under the Firearms Owners' Protection Act (FOPA), Pub. L. No. 99-308, 100 Stat. 449 (1986), which added "willfully" to 18 U.S.C. § 923(e), ATF must show more than that a licensee acted with disregard or indifference to the law and that a licensee's acts were more than inadvertent errors or technical mistakes. Shawano suggests that "willful" requires an intentional act. Shawano relies on the Senate Report relating to the inclusion of "willfully" in § 923(e) and contends that the Senate Report's reference to "current caselaw" means the definition of willfulness set out in *Rich v. United States*, 383 F. Supp. 797 (S.D. Ohio 1974). *See* S. Rep. No. 98-583, at 14 (1984). The court in *Rich* adopted a "purposeful, intentional conduct" definition of willful. Shawano also relies on *Bryan v. United States*, 524 U.S. 184 (1998), which involved a criminal charge under 18 U.S.C. § 924(a)(1) for dealing in firearms without a federal firearms license. Shawano argues that FOPA's addition of a willfulness element to the criminal penalties provision of the GCA, 18 U.S.C. § 924(a)(1), which according to the Senate Report was added "to avoid prosecutions in cases where, for instance, a licensee carelessly committed a technical recordkeeping violation or other minor, inadvertent infraction," supports a specific intent requirement under § 923(e). *See* S. Rep. No. 98-583, at 20.[3] Shawano urges courts to

---

[3] The next sentence in the Senate Report, which Shawano does not quote, states: "However, the Committee was receptive to concerns expressed by the Administration that requiring a
(continued...)

apply the single meaning rule such that "willful" has the same definition under the civil and criminal provisions of the GCA.[4]

Shawano's argument bucks this Court's holding in *Article II* that the appropriate standard for willfulness for purposes of revoking a firearms dealer's license is purposeful disregard of, or plain indifference to, a known legal obligation. 441 F.3d at 497. Other circuits similarly apply this standard. *See generally Armalite, Inc. v. Lambert*, 544 F.3d 644, 647 (6th Cir. 2008); *On Target Sporting Goods, Inc. v. Attorney General*, 472 F.3d 572, 575 (8th Cir. 2007); *RSM, Inc. v. Herbert*, 466 F.3d 316, 321-22 (4th Cir. 2006); *Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 415 F.3d 1274, 1277 (11th Cir. 2005); *Perry v. Department of the Treasury*, 637 F.2d 1332, 1336 (9th Cir. 1981). Shawano's assertion that it is not asking this Court to overrule *Article II* is puzzling. Not only did this Court define "willfulness" for purposes of § 923(e)—after enactment of FOPA and the Supreme Court's decision in *Bryan*—but the Court also rejected the *Bryan* argument pressed by Shawano. *Article II*, 441 F.3d at 487-98.

---

[3]  (...continued)
'willful' state of mind in some instances could pose legitimate law enforcement problems." S. Rep. No. 98-583, at 14 (1984).

[4] Notably, after the paragraph governing judicial review of a decision to revoke a license, 18 U.S.C. § 923(f)(3), paragraph (4) states: "If criminal proceedings are instituted against a licensee  . . . ." This language highlights the decidedly civil nature of § 923(f)(3).

In *Bryan*, the defendant had been convicted of conspiring to sell firearms without a license and engaging in the sale of firearms without a license, in violation of the provisions of the Gun Control Act that contained a willfulness requirement. *See* 18 U.S.C. §§ 922(a)(1) and 924. The defendant claimed that he had no knowledge of the Act's requirements, so that his violations could not be willful. The Court held that the defendant's bad purpose was sufficient to satisfy the willfulness requirement under the facts of that case, where the defendant had used straw purchases, filed off guns' serial numbers, and sold guns on the black market. *Bryan*, 524 U.S. at 189, 194-96, 118 S. Ct. 1939.

The *Bryan* Court recognized that this Court in *Stein's* "stated that willfulness in § 923(d)(1) is satisfied by a disregard of a known legal obligation." *Id*. at 196-97, 118 S. Ct. 1939. The Court found that while cases like *Stein's* "support the notion that disregard of a known legal obligation is sufficient to establish a willful violation, they in no way stand for the proposition that it is required." *Id*. at 197-98, 118 S. Ct. 1939. The *Bryan* Court did not hold that a showing of "bad purpose" is required before ATF can revoke the license of a gun dealer who violates the Act despite knowledge of its requirements. *Id*. Rather, the Court simply held that a bad purpose may be sufficient to demonstrate purposeful disregard for or plain indifference to the law, where there is no evidence a party was aware of the requirements of

the law. In this case, it is clear that [the firearms dealer] was aware of its obligations under the Act.

*Article II*, 441 F.3d at 487-98.

Finally, we reject Shawano's argument that its violations were not willful based upon the infrequency of the errors in comparison to the number of transactions conducted, the fact that a computer glitch prevented it from showing at the time of the compliance inspection the disposition of fifty-four firearms, and the showing that the alleged straw purchases were proper transfers. There is no de minimis exception to § 923(e). *See Article II*, 441 F.3d at 498 ("The revocation provision applies regardless of whether a firearms dealer's failure to comply with the Act actually results in illegal possession or usage of a firearm or an inability to track a firearm that has been sold."). Moreover, any computer malfunction during the inspection does not explain Shawano's failure to print the acquisition and disposition report every six months as required. Similarly, whether certain purchases were straw purchases is beside the point: Shawano had reason to believe, at the time the second purchaser applied to purchase the firearm, that the individual was not the intended purchaser.

Shawano also points to Inspector Mleczko's testimony at the administrative hearing that he saw no indication of willful or intentional disregard of ATF regulations by Mr. Backes or other employees at Shawano. Mr. Backes disputes that he was given regulatory material when he applied for the license. The record is clear that it was Mr. Backes who applied for the license in 1998, partici-

pated in the compliance inspections in 1999, 2004, and 2007, and attended the warning conference in 2005. After each inspection, he acknowledged the corrective action that needed to be taken. Mr. Backes testified at the administrative hearing and submitted an affidavit for the district court's consideration. His affidavit establishes that he hired counsel after receiving the 2007 Notice of Revocation and that, since that time, he has imposed many workplace changes to ensure compliance with federal firearms laws. These measures come too late. Despite being given multiple opportunities to take corrective action, Shawano continued to repeat its violations. The suggestion in its brief and in Mr. Backes's affidavit that, basically, Shawano gets the message loud and clear and will do better if given another chance is not an argument that reaches the merits of the case. ATF has the authority to revoke Shawano's federal firearms license, and its decision to do so in this case is fully supported, as a matter of law, by the record submitted to the district court.

We make one final comment regarding Shawano's evidentiary hearing argument. Shawano submitted materials to the district court that were not submitted to the Hearing Officer, and the district court accepted those materials. Shawano now argues that it was denied requested discovery—specifically, other instances where ATF has revoked firearms dealers' licenses to enable a comparative analysis of the history of violations in each instance—and that, had a hearing been held, it could have asked witnesses about this information. Supporting its comparative analysis argument, Shawano contends

that its score for correct completion of ATF Forms 4473 was 99.2 percent and that, comparatively speaking, such a high percentage does not warrant revocation. Shawano further argues that the district court was required to evaluate Mr. Backes's credibility in person before deciding that he purposely disregarded or was plainly indifferent to federal rules and regulations.

The district court entered a scheduling and discovery order on August 7, 2009, setting the discovery deadline for November 6, 2009. Shawano never sought relief in the district court relating to its discovery request for comparable cases that ATF allegedly refused to provide. It cannot now argue that the district court abused its discretion in failing to conduct an evidentiary hearing to consider such evidence when it failed to pursue such evidence during discovery. The district court accepted Mr. Backes's affidavit and did not abuse its discretion by considering the affidavit rather than testimony. *See Stein's*, 469 F.2d at 466 n.5.

## III. Conclusion

The district court properly concluded, as a matter of law and without an evidentiary hearing, that Shawano willfully violated the GCA and that ATF was authorized to revoke Shawano's federal firearms license. The district court's judgment affirming ATF's final administrative decision is AFFIRMED.